436 A.2d 192

**Bernet IGNACIC, Appellant,**

**v.**

**PENN CENTRAL TRANSPORTATION COMPANY, a corporation, and Robert W. Blanchette, Richard C. Bond, and John H. McArthur, Trustees of the property of Penn Central Transportation Company.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed May 15, 1981.

Rehearing Denied Nov. 9, 1981.

Petition for Allowance of Appeal Denied Dec. 2, 1981.

432

Thomas Hollander, Pittsburgh, for appellant.

Aloysius F. Mahler, Pittsburgh, for appellees.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This appeal is from an order refusing to remove a compulsory nonsuit. The action is under the Federal Employers' Liability Act (FELA), ch. 149, 35 Stat. 65 (1908), as amended, 45 U.S.C. § 51 *et seq.*, to recover damages for injuries appellant claims he suffered in an accident he had while working as a pipefitter for appellee railroad. The lower court held that appellant failed to present evidence on the basis of which the jury could find, first, that appellant's accident caused his injuries, and next, that a release appellant gave the railroad was based on such a mutual mistake that it should be set aside. We have concluded, however, that the jury could have made both of these findings. We shall therefore reverse and remand for new trial.

## 1

Appellant was injured on May 4, 1974, while working as a pipefitter in appellee's engine house at Conway, Pennsylvania. His duties required him to go down some steps into a pit below the tracks. As he was doing so, he slipped and fell, striking his head, back, and wrist. Appellant and two of his co-workers testified that the steps were worn, that there was no hand rail in place, that grease, oil, and water were on the surfaces of the lower levels of the work area, and that these conditions had existed for some time and had been the subject of frequent complaints by the workmen.

Appellant missed about five weeks of work, during which time he received physical therapy for injury to his neck. By the middle of June his symptoms had abated and he was told by the physician who had been treating him that he could return to work, which he did. Shortly after returning to work he executed a release to appellee in exchange for a settlement of $2,250.

It seems undisputed—or at least so the jury could have found—that when the settlement was agreed to, both appellant and appellee's claims agent, who also testified at trial, thought that appellant was fully recovered. Appellant had some pain, but he attributed it to a bursitis condition he had had for some time; it did not much hamper his ability to work. However, starting in the latter part of 1974 appellant experienced increasing pain and difficulty in doing his work. In March 1975 he sought medical attention from a general practitioner, Harry Seltzer, M.D. Dr. Seltzer hospitalized appellant and referred him to David Kraus, M.D., an orthopedic surgeon. Appellant was hospitalized for over three months. At least part of this time he was paralyzed in all four extremities. After a period of recuperation at home he was hospitalized again in order to be placed in a halo apparatus. Not until June 1976 was he well enough to return to work.

## 2

FELA actions are governed by federal law. *Chesapeake & Ohio R. Co. v. Kuhn*, 284 U.S. 44, 52 S.Ct. 45, 76

L.Ed. 157 (1931). This is true as regards proof of causation, *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), adequacy of medical testimony, *Sentilles v. Inter-Carribean Shipping Corp.*, 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959), and the validity of a release given by an injured worker to the employer, *Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359, 72 S.Ct. 312, 36 L.Ed. 398 (1952). The Act is to be liberally construed on behalf of injured workers, *Gallick v. Baltimore and Ohio R.R. Co.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), with the result that often recovery will be proper under the Act when it would not be under the common law of negligence, *Rodriquez v. Delray Connecting Railroad*, 473 F.2d 819 (6th Cir. 1973). Only in the most frivolous FELA action is a compulsory nonsuit proper. *Ciarolla v. Union Railroad Company*, 235 Pa.Super. 137, 338 A.2d 669 (1975).

a

Appellant's medical witnesses were his treating physicians, Dr. Seltzer and Dr. Kraus; they had testified on deposition, and their depositions were admitted in evidence at trial. Both stated on direct examination that they believed that appellant's fall could have contributed to his later problems, and both were unshaken by cross-examination. Dr. Kraus, appellant's orthopedic surgeon, had written appellant's counsel, "It is my opinion that this injury certainly could have attributed [*sic*; contributed?] to the weakening of the transverse ligament that allowed the subsequent instability to develop." During cross-examination appellee's counsel read this passage back and asked if that was still his opinion, to which Dr. Kraus replied, "Right, sir." R.R. 184a–85a.

Under the FELA, the plaintiff's case should go to the jury if the testimony is that the injury might be or could be a consequence of the accident. *Sentilles v. Inter-Carribean Shipping Corp., supra.* The Third Circuit has stated the rule as being that "a trial court is justified in withdrawing such issues from the jury's consideration only in those ex-

tremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee." *Pehowic v. Erie Lackawanna Railroad Co.*, 430 F.2d 697, 700 (3d Cir. 1970). The plaintiff need not prove that the defendant's negligence was the exclusive cause of the injury, only that it was one cause. *Heater v. Chesapeake & Ohio Railway Company*, 497 F.2d 1243 (7th Cir.), *cert. denied*, 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974). *See also, Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969). Applying these liberal principles here, we conclude that appellant's case should have gone to the jury, unless appellant is barred by his release.

b

■ The validity of a release of a FELA case is a question of federal law. *Dice v. Akron, Canton & Youngstown R. Co., supra*. The burden of proof is on the party seeking to set aside the release. *Callen v. Pennsylvania Railroad Company*, 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242 (1948). In deciding whether the proof justifies setting aside a release, the cases distinguish between proof of a mutual mistake as to a material fact concerning the worker's *present condition*, when the release will be set aside, and proof of a mutual mistake as to a material fact concerning the *expected future development* of a present condition, when the release will not be set aside. *E. g., Edwards v. Western & Atlantic Railroad*, 552 F.2d 137 (5th Cir. 1977); *Robertson v. Douglas Steamship Company*, 510 F.2d 829 (5th Cir. 1975); *Wooten v. Skibs A/S Samuel Bakke*, 431 F.2d 821 (4th Cir. 1969); *Chicago & North Western Railway Company v. Curl*, 178 F.2d 497 (8th Cir. 1949); *Robles v. Trinidad Corporation*, 270 F.Supp. 570 (S.D.N.Y.1966).

It is easier, however, to state this rule than to apply it. The problem is, What does "present condition" mean?

Courts have had no difficulty in finding a mutual mistake concerning present condition when the mistake concerned the *nature* of the injury. For example, in *Robertson v.*

*Douglas Steamship Company, supra,* the release was set aside on proof that it was executed in the belief that the injured worker had suffered only superficial injuries to his neck, back, and limbs when in fact, as it later turned out, he was afflicted with a rare condition known as idiopathic retroperitoneal fibrosis, which is a scarring of the lining in the lower abdomen. Cases such as *Robertson,* however, are not dispositive of the present case, for while they show that a mistake concerning "present condition" *includes* a mistake concerning the nature of the injury, they do not show what, if anything, *more* may be included.

The lower court was of the opinion that nothing more may be included, and that a release should be set aside *only* when the mistake concerned the nature of the injury:

> [T]he mistake of fact *must go to the nature of the injury* to which the Release relates. Question[s] as to the extent, outcome, or expected course of healing of the injury are not sufficient and are to be distinguished from a mistake as to the nature of the injury.

Slip op. at 3 (emphasis added).

Thus, the court limited a mistake concerning "present condition," on proof of which a release will be set aside, to a mistake concerning "the nature of the injury." A mistake concerning "expected future development of a present condition," on proof of which a release will not be set aside, was characterized as including mistakes "as to the extent, outcome, or expected course of healing of the injury."

We acknowledge that some cases may be read as supporting the lower court's statement of the law. In *Robles v. Trinidad Corporation, supra,* the worker had been accidentally locked into a food freezer on his ship for about an hour at a temperature of 15 degrees Fahrenheit. After being treated for frostbite and his initial anxiety reaction, he sued his employer and, following an out-of-court settlement, executed a release. Later, in trying to have the release set aside, he presented the testimony of a psychiatrist that he had a psychiatric or emotional condition resulting from the accident at the time he executed the release. The court

refused to set aside the release, finding that there had at most been a miscalculation of the consequences of the accident. One of the cases discussed with approval in *Robles* was *Moyer v. Scholz*, 22 A.D.2d 50, 253 N.Y.S.2d 483 (1964). In *Moyer* the testimony indicated that when the release was given, both parties believed that the plaintiff had completely recovered from the effects of the automobile accident she had been in, but that later it developed that she had suffered a whiplash injury, the effects of which had not yet become evident when the release was given. The court found the parties' mistake to be only a failure to appreciate the consequences of a known injury and refused to set aside the release. The lower court opinion in this case quotes with approval from both *Robles* and *Moyer*. Slip op. at 3–4.

It may be that on their facts, *Robles* and *Moyer* are correctly decided. If, however, they are to be understood as the lower court understood them—as holding that a release will be set aside *only* when the mistake concerns the *nature* of the injury and *never* when the mistake concerns the *extent* of the injury—we find them unpersuasive.

In *Chicago & North Western Railway Company v. Curl, supra*, the initial diagnosis, on the basis of which the release was executed, was severe sprain of the neck, mild sprain of the dorsal spine, and contusions of the left scalp. Later, in trying to have the release set aside, the worker presented medical testimony to the effect that he had also suffered a slipped or prolapsed cervical disc, which would result in permanent disability. The Eighth Circuit found this satisfactory evidence of mutual mistake. In *Wooten v. Skibs A/S Samuel Bakke, supra*, the testimony was that when the release was executed, both sides assumed that the injury to the worker's ankle would not be permanent, but it later turned out otherwise. In reversing the district court's dismissal of the action and remanding for trial, the Fourth Circuit quoted Judge Learned HAND with approval: " 'To tell a layman who has been injured that he will be about again in a short time is to do more than prophesy about his recovery. No doubt it is a forecast but it is ordinarily more

than a forecast; it is an assurance as to his present condition, and so understood.  * * * The issue was at best for the jury; * * *.' *Scheer v. Rockne Motors Corp.*, 68 F.2d 942, 945 (2d Cir. 1934)."  431 F.2d at 823.

So it seems to us.  To say to a worker, as in *Wooten*, "The injury to your ankle is not permanent," is the same as saying, "The *present condition* of your ankle is such that your injury will not be permanent."  If both parties believe this, there is a mutual mistake concerning the worker's present condition, and the release should be set aside.  The line drawn by the court in *Robles* and *Moyer*, and by the lower court, is too sharp.  It may be that the parties are not mistaken about the nature of the injury, if one speaks in general terms;  in other words, they may correctly believe that the injury is to the ankle, as in *Wooten*, or to the neck, as in *Chicago & North Western*.  However, they may be so mistaken that the extent of the injury that for practical purposes, that is, so far as the worker's ability to work is concerned, they may as well be mistaken about the nature of the injury.

■  We therefore conclude that a mistake concerning "present condition" may include not only a mistake concerning the nature of the injury but also a mistake concerning the extent of the injury.  We find this conclusion both more logical than that reached in *Robles* and *Moyer*, and also, more consistent with the goals sought to be achieved by the Congress in enacting the FELA.  *See, e. g., Gallick v. Baltimore and Ohio R. R. Co., supra; Ciarolla v. Union Railroad Company, supra.*

■  It follows that the lower court should have permitted appellant's case to go to the jury.  Appellant argues that when he executed his release, he and appellee both believed that he had fully recovered from his fall but that he was actually suffering from a weakened transverse ligament.  Brief for Appellant at 7.  Viewed in the light most favorable to appellant, the evidence he presented at trial could support such a finding.  If one were to adopt the approach taken by

*Robles* and *Moyer*, and by the lower court, the evidence would still not be sufficient to set aside the release, for the parties' mutual mistake concerned not the nature of appellant's injury but its extent. However, if one adopts the approach taken by *Wooten*, as we have concluded we should, appellant's evidence was sufficient to set aside the release. To believe that one is fully recovered is the same as believing that there will be no future consequences. If there nevertheless are future consequences, by definition one was in fact not fully recovered. Accordingly, there was a mistake concerning one's "present condition," as distinguished from a mistake concerning "expected future development." If this mistake was mutual, one's release should be set aside.

Reversed and remanded for new trial.

WICKERSHAM, J., concurs in the result.