David F. LABES, Appellant

v.

NEW JERSEY TRANSIT RAIL OPERATIONS, INC., Appellee

Superior Court of Pennsylvania.

Argued Feb. 3, 2004.

Filed Dec. 9, 2004.

**1196**

James Prokupick, Philadelphia, for appellant.

James E. Egbert, Philadelphia, for appellee.

Before: KLEIN, McCAFFERY, and OLSZEWSKI, JJ.

OPINION BY McCAFFERY, J:

¶ 1 Appellant, David F. Labes, asks us to determine whether the trial court erred in refusing to remove the non-suit entered against him at trial. Specifically, we must decide whether Appellant presented adequate evidence of negligence, pursuant to the Federal Employers' Liability Act ("FELA")[1], to permit his case to be decided by a jury. We hold that under FELA's liberal evidentiary standards, Appellant did, in fact, proffer evidence sufficient to survive a non-suit. Accordingly, we are constrained to reverse and remand for a new trial.

¶ 2 The relevant facts and procedural history are as follows. Appellant started working for Appellee, New Jersey Transit Rail Operations, Inc. ("NJTRO") as a water service mechanic in 1987. The job required Appellant to repair and install pipes and perform other maintenance. Notes of Testimony (N.T.), 10/1/01, at 49. The job also required Appellant to work outdoors year round, to kneel for long periods on ballast and rail ties and perform heavy lifting. (*Id.* at 52–57; 61–63). Appellant was either using his back, knees or both a minimum of four to five hours per day. (*Id.* at 68). Over the years,

---

1. 45 *U.S.C.* §§ 51–60.

NJTRO decreased its manpower in Appellant's department, which meant he had to do more of this work. (*Id.* at 71). He complained to his supervisors about the lack of manpower. (*Id.* at 71). Appellant complained to his supervisor about his knee pain. (*Id.,* at 74). He requested knee pads, but none were provided. (*Id.* at 73).[2] He began experiencing severe back pain as well. (*Id.* at 83). Appellant also complained to his supervisor about his back pain. (*Id.* at 92). He stated he never received any job training or preventive instruction on how to avoid back or knee injuries. (*Id.* at 74–75; 79). By 1999, Appellant required surgery on his right knee. (*Id.* at 73). He has received several injections as well as treatment from a chiropractor for his back pain. (*Id.* at 93).

¶ 3 Appellant brought this negligence suit against Appellee under FELA. At trial, Appellant presented testimony from a co-worker who corroborated Appellant's testimony concerning job duties, lack of manpower and lack of training. Appellant also presented the testimony of his orthopaedic surgeon, Dr. Esformes, in support of his causation argument that the repetitive nature of his work had caused the back and knee problems, including specifically the heavy lifting and extended periods of kneeling on hard and uneven surfaces which his job required. At the close of Appellant's case, the trial court granted Appellee's motion for compulsory non-suit and Appellant's case was dismissed.

¶ 4 In this timely appeal, Appellant raises the following issues for our review:

1. DID THE TRIAL COURT ERR IN GRANTING APPELLEE'S MOTION FOR NON–SUIT AT THE CLOSE OF APPELLANT'S CASE IN CHIEF?

2. DID THE TRIAL COURT ERR IN DISMISSING APPELLANT'S CASE BASED UPON A LACK OF EVIDENCE AS TO NEGLIGENCE UNDER THE FEDERAL EMPLOYERS['] LIABILITY ACT?

3. DID THE TRIAL COURT ERR IN DISMISSING PLAINTIFF'S CASE BASED UPON A LACK OF EVIDENCE AS TO CAUSATION UNDER THE FEDERAL EMPLOYERS['] LIABILITY ACT?

4. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION FOR POST–TRIAL RELIEF?

(Appellant's Brief at 3). Although raised as four separate appellate issues, all four questions raise essentially the same claim: the trial court erred by entering a non-suit in favor of Appellee. We agree.

¶ 5 As noted, this action arises under FELA. Section 1 of FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. In assessing FELA's scope, the Supreme Court has observed:

> when Congress enacted FELA in 1908, its attention was focused primarily upon injuries and death resulting from accidents on interstate railroads. Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the 'human overhead' of doing business from employees to their employers.

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (citations and quotations omitted).

---

**2.** He eventually purchased his own pads after knee surgery. (N.T., 10/1/01, at 73).

¶ 6 We must begin, however, by emphasizing our standard of review. The state and federal courts have concurrent jurisdiction over FELA cases. *Harding v. Consolidated Rail Corp.,* 423 Pa.Super. 208, 620 A.2d 1185, 1188 (1993). "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal."[3] *Id.* (citing 45 U.S.C. § 56; *St. Louis Railway Co. v. Dickerson,* 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985)). Thus, in the case *sub judice,* we must be guided in our determination of whether Appellant presented a question for a jury by the standard which the United States Supreme Court set forth:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence played any part at all in the injury or death.

*Harding, supra,* 620 A.2d at 1188, citing *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506–507, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (emphasis added). Our Court has consistently adhered to the *Rogers* standard, stating that in only the most frivolous cases may the courts deny a FELA plaintiff his or her qualified right to a jury trial. *Ciarolla v. Union Railroad Co.,* 235 Pa.Super. 137, 338 A.2d 669, 671 (1975). "[FELA] is to be liberally construed on behalf of injured workers, with the result that often recovery will be proper under [FELA] when it would not be under the common law of negligence." *Ignacic v. Penn Cent. Transp. Co.,* 291 Pa.Super. 431, 436 A.2d 192, 194 (1981) (citations omitted). "[T]he test of a case for the jury under the FELA 'is simply whether the proofs justify with reason the conclusion that employer negligence played *any* part, even the slightest, in producing the injury or death for which damages are sought.'" *Ciarolla, supra* at 672 (emphasis added) (citation omitted). "To deprive railroad workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.'" *Id.* at 673 (quoting *Bailey v. Central Vermont Railway,* 319 U.S. 350, 354, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943)).

¶ 7 In *Pehowic v. Erie Lackawanna Railroad Co.,* 430 F.2d 697 (3rd Cir.1970), the plaintiff brought an action against the defendant railroad for injuries sustained when he was stung by a bee while working. There was evidence that the plaintiff had informed the defendant's dispatcher of the brush and bees in the area. The trial court granted the defendant's motion to dismiss the plaintiff's claim, concluding there was no evidence from which a jury could infer a causal relation between the defendant's conduct and the plaintiff's claimed injury. The United States Court of Appeals for the Third Circuit reversed, noting:

> A review of the decisions of the Supreme Court with reference to the integrity of the jury's function in these cases, keeping in mind the purposes of the Act and the liberal construction given it, teaches that a trial court is justified in withdrawing such issues from the jury's

---

**3.** Notably, the trial court erroneously applied *Pennsylvania* law in deciding appellant's post-trial motion. (*See* Trial Court Opinion, 9/17/03 at 6).

consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee. *Id.* at 699–700 (emphasis added) (footnotes omitted). Consequently, the Court observed, direct evidence of a causal relation between conduct and injury was not necessary. Circumstantial evidence of a causal relation is sufficient. *Id.* at 700 (citing *Rogers,* 352 U.S. at 508, n. 17, 77 S.Ct. 443). The Court emphasized that a jury could have concluded that the defendant's failure to ameliorate the plaintiff's working conditions was a breach of the defendant's duty to provide a reasonably safe work place. Furthermore, the Court stated that the jury "could infer the existence of a causal relation between that breach of duty and the injury sustained by the plaintiff. Even though equally reasonable alternative inferences are supportable, such an analysis would not be unsupported in reason." *Id.* Thus, the Court concluded it was error to enter judgment for the defendant. Subsequently, the *Pehowic* "zero probability" test has been applied consistently by the Third Circuit. *See, e.g., Hines v. Consolidated Rail Corp.,* 926 F.2d 262, 268 (3rd Cir.1991) and cases cited therein.

■ ¶ 8 Instantly, in addition to his own testimony at trial, Appellant presented evidence from his treating physician and expert, Dr. Esformes, that his working conditions at the very least *contributed* to Appellant's back and knee injuries:

Q.... Now, based on your review of Dr. Brenner's and your notes and Dr. Dutkowsky's notes as well as the MRI's that we discussed earlier as well as David Labes' deposition, do you have an opinion with a reasonable degree of medical certainty as to the cause of David Labes' back injury and knee injuries?

A. Well, I believe that it is a combination of his repetitive nature of his work, the heavy lifting on a constant basis, the kneeling, the climbing, all of this done over a period of time over and over and over again. So I believe that that is the etiology or the cause of most of his problems.

(N.T., Dr. Ira Esformes, 9/12/01, at 47–48).

Q. And is there any records [sic] in your notes of what you discussed with him on February 16?

A. Yes. Basically, that he is a plumber by trade for New Jersey Transit. And in that time, that one line indicated that I spent some time with him talking about exactly what he was doing.

Q. Exactly what was he doing?

A. He was lifting up heavy equipment, heavy pipes, crawling in spaces, small spaces, being on his knees for a long period of time. Because at that stage I was kind of taking over his care. So I wanted to get a better understanding of what was going on with him. Each job at New Jersey Transit is an experience regarding what they do and do not do. So I usually spend some time talking to the person about what they do.

And his, you know, description to me was that of kneeling down on uneven ground on his knees without pads, climbing up ladders, lifting up heavy pipes, which are awkward just from the fact that they are long. They may not weigh hundreds and hundreds of pounds, but if you take a 50 pound pipe and it is very long, just the lever arm alone can, you know, injure you, just lifting it up. So that is the kind of thing that we were talking about.

(*Id.* at 54–55). Dr. Esformes also indicated his familiarity with injuries to railroad workers:

Q. Dr. Esformes, ..., have you personally had occasion to treat railroad workers with knee injuries before?

A. Yes, I have.

(*Id.* at 15–16). As set forth *supra*, Appellant's expert also testified that he was familiar with employees of NJTRO and what they do, and that he spends time talking with a patient about his or her work. (*Id.* at 54).

¶ 9 The trial court found "plaintiff merely showed it was possible that his injuries may have resulted from the defendant's negligence." Trial Court Opinion at 9. Under FELA, however, such a showing is sufficient. Indeed, a non-suit under FELA is justified only in those cases where there is a zero probability either of employer negligence or that any such negligence contributed to an employee's injury. *See Pehowic, supra,* 430 F.2d at 700.

¶ 10 Based on the reasoning set forth above, we conclude that the trial court improperly granted Appellee a non-suit on the basis that Appellant presented merely a possibility that Appellee's negligence caused his injuries. From the evidence presented, a jury could reasonably find that Appellee's failure to mitigate Appellant's work place conditions was a breach of its duty to provide its employees with a relatively safe work place. *See Ciarolla,* 338 A.2d at 672. Therefore, after a careful review of the record and in light of the appropriate standards, we hold that the determination of negligence, if any, was for the jury. Accordingly, we reverse the judgment entered in favor of Appellee and remand for a new trial consistent with this opinion.

¶ 11 Judgment reversed. Case remanded for a new trial. Jurisdiction relinquished.

¶ 12 Judge KLEIN files a Dissenting Statement.

KLEIN, J., Dissenting:

¶ 1 I am unable to conclude, as the majority does, that the trial court erred in granting summary judgment in this case. I believe that the trial court properly awarded summary judgment because the record is devoid of evidence establishing a causal relationship, however slight, between the defendant and the injuries alleged by the plaintiff. Therefore, I must respectfully dissent.

¶ 2 At trial, plaintiff submitted the deposition testimony of his expert, Dr. Ira Enformes, whose testimony regarding causation consisted *in its entirety* of the following:

Well, I believe that it is a combination of his repetitive nature of his work, the heavy lifting on a constant basis, the kneeling, the climbing, all of this done over a period of time over and over again. So I believe that that is the etiology or the cause of most of his problems.

(N.T. 9/12/01, 47–48). On cross-examination during the deposition, Dr. Enformes highlighted some of plaintiff's job duties at New Jersey Transit:

And his, you know, description to me was that of kneeling down on uneven ground on his knees without pads, climbing up ladders, lifting up heavy pipes, which are awkward just from the fact that they are long. They may not weigh hundreds and hundreds of pounds, but if you take a 50 pound pipe and it is very long, just the lever arm alone can, you know, injure you, just lifting it up. So that is the kind of thing that we were talking about.

(N.T. 9/12/01, 54–55).

¶ 3 At no point did the doctor testify as to some causal connection between company's actions or omissions and plaintiff's alleged injuries. At most, he merely indi-

cated that plaintiff had to do hard work; he did not testify that the work or environment was unreasonably dangerous.

¶ 4 Under FELA, a railroad has a duty to provide employees with: (1) a reasonably safe workplace; (2) safe equipment; (3) proper training; and (4) suitable methods to perform the assigned work. *Aparicio v. Norfolk & W. Ry. Co.*, 874 F.Supp. 154, 158 (N.D.Ohio 1994). *See Dukes v. Illinois Central Railroad Co.*, 934 F.Supp. 939 (N.D.Ill.1996).

¶ 5 While a plaintiff's burden of establishing the common law elements of negligence is tempered in FELA cases— plaintiffs need only demonstrate that the employer's negligence played even "the slightest" part in producing the injury— such construction "does not mean that [FELA] is a worker's compensation statute." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Indeed, the Unites States Supreme Court has repeatedly "insisted that FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, *not the fact that injuries occur.*' " *Id.* (citations omitted) (emphasis added). Thus, evidence that an employee has sustained injuries while on duty, without more, is insufficient to advance a FELA case to a jury.

¶ 6 Here, plaintiff merely established that he sustained injuries during the year span contemporaneous with his employment with defendant. Plaintiff did not produce evidence establishing that the method of work, equipment or training prescribed by defendant was unsafe. At most, plaintiff established that he was required to perform arduous work, rather than "unreasonably dangerous" work, which is critical.

¶ 7 Although plaintiff and fellow employee Brian Roth testified that they were not provided knee pads or back braces, plaintiff never submitted additional evidence, via expert or otherwise, establishing that kneepads or a back brace would have prevented his injuries. Plaintiff's doctor never testified, for example, that "had defendant provided plaintiff with the requested knee pads, he would not have received the injuries," or "had defendant provided training or increased its workforce, plaintiff would not have suffered these injuries." In fact, plaintiff himself admitted at trial that he did not have to work substantially more as a result of a reduced staff, stating that he worked "the same or a little bit more" than what he did when he began working there. (N.T. 10/1/01, 107; R.R. 263a).

¶ 8 Further, Dr. Enformes conceded that he had: (1) no idea how many hours per eight-hour workday plaintiff was required to perform the alleged arduous activities; and (2) no knowledge of plaintiff's previous occupational activities or activities performed outside of work, which in this case included *exercise, bicycle riding, and weight lifting.* In that regard, and perhaps most telling, Dr. Enformes candidly admitted that plaintiff could have received his injuries from activities performed wholly outside of work, such as from his weight lifting: "It is hard to say regarding that. It may be from doing weightlifting, that type of thing, by all means." (N.T. 9/12/01, 63–64). Thus, plaintiff did not even establish that he sustained his injuries while on duty, let alone from unreasonably dangerous conditions or equipment.

¶ 9 In sum, in order for a plaintiff to prove that a railroad company breached its duty under FELA, he must offer evidence establishing that the equipment provided or manner in which he was required to use it was unsafe. He must then establish a causal nexus between the breach and the

alleged injuries. Instantly, plaintiff offered no evidence that the condition of his workplace or equipment he was required to use was unsafe, and failed to establish a causal nexus. Rather, he merely set forth his job duties and alleged that he had suffered knee and back injuries at some point in the late 1990s. Such scant and tenuous evidence was simply insufficient to advance this case to a jury. Accordingly, I would affirm the trial court's order granting summary judgment.