J-A05032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM R. ANDERSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CONSOLIDATED RAIL CORPORATION | : | No. 1573 EDA 2021 |

Appeal from the Order Entered July 27, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No. 170801984

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 23, 2023**

William R. Anderson (Appellant) appeals from the order entering summary judgment in favor of Consolidated Rail Corporation (Conrail). After careful review, we are constrained to reverse and remand for further proceedings.

The trial court summarized the case history as follows:

> Appellant commenced this personal injury action under the Federal Employers Liability Act ("FELA"), [45 U.S.C. § 51, *et seq.*,] by complaint, on August 22, 2017. A Case Management Order ("CMO") listing, *inter alia*, expert report deadlines was issued on December 5, 2017. The first CMO provided that [Appellant's] expert report was due no later than November 5, 2018. The deadline was extended on four occasions, the last being April 1, 2021, wherein [the trial court] provided that "[Appellant] shall submit expert reports no later than 03-May-2021." ***See*** CMO (04/01/2021). Despite the directive, and with no permission or excuse, [Appellant] submitted the expert report of [] Mark Levin[, M.D. (Dr. Levin)] (the "Levin Report"), on May 5, 2021.

\* \* \*

[] In his complaint, Appellant alleged that occupational exposures to diesel exhaust, creosote, and asbestos, while [Appellant was] working for … Conrail[] as a timekeeper and trackman[,] caused him to develop stage 0 chronic lymphocytic leukemia ("CLL"). Appellant offered the Levin [R]eport … on the issue of causation.

Trial Court Opinion, 10/1/21, at 1, 2.

The Levin Report detailed Appellant's occupational and medical history:

[Appellant] worked for Conrail from 1976 to 1990. Initially, [Appellant] did clerical work for 2 years and moved to [being] a trackman for 5 years and was a track foreman from 1983 to 1990. After [Appellant] left Conrail, he went to Red's Towing for 22 years. [Appellant] weas [sic] exposed to diesel exhaust, creosote, and asbestos on a daily basis throughout his employment with Conrail. On July 17, 2012, at age 64, [Appellant] was diagnosed with … CLL[]. [Appellant's] father smoked but did not do so at home. [Appellant] never smoked. [Appellant's] father died of lung cancer and his mother died of stomach cancer.

Levin Report, 5/3/21, at 2 (unnumbered).[1]

In preparing his Report, Dr. Levin stated he had reviewed "the Complaint, [Appellant's] deposition, Appellant's discovery responses, medical and billing records," *id.*, as well as a report (Perez Report) prepared by Hernando R. Perez, Ph.D. (Dr. Perez), who Appellant also had retained as an expert.[2] According to Dr. Levin, the Perez Report established that Appellant's

---

[1] The Levin Report is attached to Conrail's motion for summary judgment. **See** Motion for Summary Judgment, 6/7/21, Ex. A.

[2] Dr. Perez is an expert in the field of industrial hygiene and occupational health. **See** Perez Report, 4/25/19, at 1 (attached to Conrail's motion for summary judgment as Ex. K). Dr. Perez interviewed Appellant, listed
*(Footnote Continued Next Page)*

- 2 -

"exposure[s to] diesel exhaust including benzene, creosote, and asbestos, are higher than ambient or background levels of exposure." *Id.*[3] Dr. Levin quoted the following passage from the Perez Report:

> Among the established carcinogens present in diesel exhaust is benzene. Benzene resulting from diesel exhaust emissions has been observed to be present at established health hazard concentrations in personal air samples of bus maintenance workers. Given the similarities in work environments between bus and locomotive maintenance facilities, similar exposure conditions can be anticipated. Benzene exposure is an established cause of leukemia. This association is relevant to the case of [Appellant] given his chronic occupational exposure to diesel exhaust and leukemia diagnosis.

Levin Report, 5/3/21, at 3 (quoting Perez Report, 4/25/19, at 8) (footnotes omitted by Dr. Levin).

Dr. Levin opined:

> I conclude [Appellant's] exposure to benzene was more likely than not a contributory cause of his CLL. It is my professional medical opinion based upon more likely than not [*sic*] … that [Appellant's] CLL was caused by benzene exposure. It is widely accepted that leukemia is caused by benzene.

---

publications he reviewed in preparing his report, and stated that he "additionally reviewed relevant peer reviewed scientific literature to inform [his] opinions." *Id.* at 1-2; *see also id.* at 19-20 (list of references).

[3] The Perez Report stated, *inter alia*: "[Appellant] experienced diesel exhaust exposures across the continuum from low to intermediate during his career as a track laborer, foreman and track supervisor. [Appellant's] work settings were representative of environments associated with elevated risk of occupationally related cancer." Perez Report, 4/25/19, at 8. Dr. Perez further detailed Appellant's exposures to different toxic substances while working for Conrail, including creosote, asbestos, and benzene. *See id.* at 8-15; *but see also id.* at 16 (observing Appellant "did not have air sampling or biological monitoring performed to assess his exposures at any point during his career with [Conrail].").

Levin Report, 5/3/21, at 5 (unnumbered; break omitted).

On June 7, 2021, Conrail filed a motion for summary judgment, claiming:

> Dr. Levin's report wholly fails to identify or discuss any, let alone a generally accepted, methodology supporting his threadbare opinions on general and specific causation. As a result, the undisputed record is devoid of any grounds on which a jury could find a causal connection between [Appellant's] alleged occupational exposures and his CLL. Accordingly, summary judgment must be entered in favor of Conrail and against [Appellant].
>
> * * *
>
> In a case that must be proven based upon established scientific and medical research, the Levin Report fails to establish either general or specific causation. Instead, Dr. Levin summarily opines that "[Appellant's] exposure to benzene was *more likely than not* a contributory cause of his CLL," and that "[i]t is my professional medical opinion based upon *more likely than not* and based on all of the above, that [Appellant's] CLL was caused by benzene exposure." [] Levin Report[, 5/3/21,] at 3 (emphasis added).

Motion for Summary Judgment, 6/7/21, at 1-2, 4 (paragraph numbers and breaks omitted). According to Conrail, the deficient Levin Report "identifies no methodology, nor does it reflect the employment of any methodology, by which [Dr. Levin] makes the leap from association to causation." *Id.* at 6. Conrail further claimed, "there is nothing in Dr. Levin's report quantifying [Appellant's] specific exposures." *Id.* at 7. Finally, in the alternative to

summary judgment, Conrail requested the trial court schedule a **Frye**[4] hearing to determine the admissibility of the Levin Report. **Id.** at 25.

Appellant filed a response opposing Conrail's summary judgment motion on July 6, 2021, asserting "Dr. Levin's report establishes both general and specific causation." Response, 7/6/21, ¶ 19. Appellant claimed, "a relaxed standard of causation is applied under the FELA." **Id.** ¶ 20 (citing **Rogers v. Missouri Pac. R.R. Co.**, 352 U.S. 500 (1957)). Appellant asserted that Dr. Levin's report was "the product of a differential diagnosis, which is a generally accepted methodology." **Id.** ¶ 65 (citing **Stange v. Janssen Pharm., Inc.**, 179 A.3d 45, 55 (Pa. Super. 2018) ("differential diagnosis is a generally accepted methodology")). Appellant explained:

> Dr. Levin reviewed the Complaint, [Appellant's] deposition, [Appellant's] discovery responses, medical and billing records and Dr. Perez's industrial hygiene report. [Dr. Levin] conducted a literature search and reviewed findings from several well[-]regarded organizations such as [the International Agency on Research of Cancer, Environmental Protection Agency, and the National Toxicology Program]. He thereafter used his professional judgment based upon his education, training and experience in formulating his opinions. As part of his differential diagnosis, Dr. Levin considered [Appellant's] genetic predisposition to cancer, and ruled out tobacco smoke.

---

[4] **See Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923) (holding courts should not admit scientific evidence at trial unless the underlying methodology has gained general acceptance in the scientific community); **see also** Pa.R.E. 702(c) (incorporating **Frye**).

*Id.* ¶ 29. Finally, Appellant argued "Dr. Levin's use of the words 'more likely than not' does not serve to form a basis to preclude his opinions in this matter." *Id.* ¶ 30.

On July 27, 2021, the trial court granted Conrail's motion for summary judgment, concluding that Appellant's "expert report fails to establish causation." Order, 7/27/21. Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

The trial court explained its rationale for entering summary judgment as follows:

> Excusing formatting and grammatical issue[s], the Levin Report was not only late but deficient. It failed to identify generally accepted methodologies used to support the opinions offered. In addition, there is no mention of the manner or levels of [Appellant's] exposure to [] "diesel[] exhaust, creosote, and asbestos." Lastly, the Levin Report merely concludes that the Appellant's "exposure to benzene was more likely than not a contributory cause of his CLL," [Levin Report, 5/3/21, at 5 (unnumbered),] but fails to identify the source of the exposure. At best, the Levin Report makes the case for a correlation, not causation. Even under FELA's relaxed standard of causation, more is required.

Trial Court Opinion, 10/1/21, at 3-4; *see also id.* at 2 ("There is no portion of the Levin Report that identifies the level of exposure during [Appellant's] work at Conrail or the length of exposure.").

Appellant presents two issues for our review:

1. Whether the Trial Court abused its discretion in granting [Conrail's] Motion for Summary Judgment as a matter of law excluding Mark Levin, M.D.[?]

- 6 -

2. Whether it was error of law for the Trial Court to conclude "[Appellant's] expert report fails to establish causation" in light of the Pennsylvania Supreme Court's decision in **Walsh v. BASF Corp.**, 234 A.3d 446 (Pa. 2020)[?]

Appellant's Brief at 4.

Preliminarily, we reiterate that this action arises under FELA. Section 1 provides:

> Every common carrier by railroad … shall be liable in damages to any person suffering injury while he is employed by such carrier … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier….

45 U.S.C.A. § 51. "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." **Labes v. N.J. Transit Rail Operations, Inc.**, 863 A.2d 1195, 1198 (Pa. Super. 2004) (citation and footnote omitted).

"In FELA cases, 'the plaintiff must prove the common law elements of negligence: duty, breach, foreseeability, and **causation**.'" **Welsh v. AMTRAK**, 154 A.3d 386, 395 (Pa. Super. 2017) (emphasis added; citation and quotes omitted). Under FELA, a jury may find liability as long as the evidence justifies the conclusion that railroad negligence "played any part, **even the slightest**, in producing the injury…." **Rogers**, 352 U.S. at 506 (emphasis added; footnote citation omitted); **see also Criswell v. Atl. Richfield Co.**, 115 A.3d 906, 912 (Pa. Super. 2015) (noting FELA employs a relaxed standard of causation that is less demanding than the common law test).

Appellant first challenges the trial court's finding that the Levin Report failed to establish causation. *See* Appellant's Brief at 14-25. Appellant claims, contrary to the trial court's determination, "Dr. Levin's opinion on specific causation [] was formed using a differential diagnosis etiology…." *Id.* at 23; *but see also id.* at 14 (asserting "Dr. Levin's expert Report identified opinions for both general and specific causation."). Appellant argues:

> Dr. Levin, as part of his differential diagnosis, properly identified and considered the risk factors and/or alternative causative factors which could lead to [Appellant's] CLL, which includes smoking, and a family history of cancer, along with workplace exposures. Dr. Levin discussed in his report that he considered [Appellant's] genetic predisposition to cancer and ruled out tobacco smoke.

*Id.* at 24. According to Appellant,

> the [trial] court improperly determined that Dr. Levin could not reach an opinion on specific causation, because, as stated in [the court's] 1925(a) opinion, "there is no portion of the Levin Report that identifies the level of exposure during [Appellant's] work at Conrail or the length of exposure" and "there is no mention of the manner or levels of [Appellant's] exposure to [] 'diesel exhaust, creosote, and asbestos.'" [Trial Court Opinion, 10/1/21, at 3, 4.] However, the [c]ourt recites this proposition in error because (1) **Dr. Levin's opinions rely upon the industrial hygiene report of Dr. Perez, which discusses [Appellant's] exposures in detail and provides ranges of exposure levels to diesel exhaust using a generally accepted methodology**; (2) Dr. Levin's report states that [Appellant's] exposure to diesel exhaust, including benzene, creosote and asbestos are "higher than ambient or background levels of exposure," and (3) dose analysis is not required for an expert to opine as to medical causation.

Appellant's Brief at 24 (emphasis added; some capitalization modified).

Appellant further claims, to the extent that Dr. Levin "does not specifically call out any methodology by name in his report," this is immaterial

where "the methodology of drawing inferences from a review of published scientific literature has been long recognized by courts as a generally accepted methodology." Appellant's Reply Brief at 1-2 (citing **Commonwealth v. Hopkins**, 231 A.3d 855, 872 (Pa. Super. 2020) ("Courts accept a variety of sources as evidence that the expert's methodology is generally accepted, including judicial opinions, scientific publications, studies, and statistics, expert testimony, or a combination of the above.") (citations omitted)).

Finally, Appellant asserts, "[h]ad the trial court felt there were questions regarding Dr. Levin's methodology, the proper procedure would have been to hold a **Frye** [h]earing as requested by [Conrail]." Appellant's Brief at 25; **see also id.** ("Instead, the trial court improperly determined that Dr. Levin's opinions were the result of no identifiable generally accepted methodology and thereafter conducted its own analysis and formulated its own opinions. This is a clear abuse of discretion….").

Conrail counters the trial court properly exercised its discretion in determining the Levin Report failed to establish causation:

> [Dr. Levin] did not take the basic steps required under the **Frye** standard to show that he employed a generally accepted methodology. Instead, [Dr.] Levin relied on studies that show only an association between [Appellant's] alleged exposures and his CLL, while providing no information about the methodology he used for choosing those studies.

Appellee's Brief at 20. According to Conrail,

> Nothing in [Dr.] Levin's report suggested that he employed **any** methodology to opine on general causation, much less a generally accepted one. The trial court acted within its discretion to

- 9 -

determine [Dr.] Levin's report was inadmissible under those circumstances. *See Snizavich v. Rohm and Haas Co.*, 83 A.3d 191, 194 (Pa. Super. 2013) (affirming the grant of summary judgment because the expert had failed to establish causation through the application of a "coherent scientific or technical methodology").

*Id.* at 18-19 (emphasis in original).

Conrail further argues:

[Dr.] Levin's report lacked any analysis of the amount (or dose) of [Appellant's] exposure to benzene and asbestos, or to the products that contained those substances. In cases involving dose-responsive diseases, including in FELA cases, "expert witnesses may not ignore or refuse to consider dose as a factor in their opinions." *Howard ex rel. Estate of Ravert v. A.W. Chesterton Co.*, 78 A.3d 605, 608 (Pa. 2013)…. Without such evidence, no causal link between the plaintiff's exposures and his disease may be inferred. *See Wilson v. A.P. Green Indus., Inc.*, 807 A.2d 922 (Pa. Super. 2002) (affirming summary judgment where evidence of regular exposure [was] insufficient to establish mesothelioma caused by plaintiff's exposure to asbestos)….

*Id.* at 21.

Finally, Conrail claims, in the alternative, that summary judgment was proper where Appellant's claims were barred by the applicable statute of limitations. *Id.* at 31 (citing 45 U.S.C. § 56 (no FELA "action shall be maintained under this act … unless commenced within three years from the day the cause of action accrued.")). According to Conrail,

[Appellant] testified he was informed by his physician no later than 2013 that his exposures to diesel exhaust, asbestos, and creosote allegedly caused his CLL. Based on his own testimony, [Appellant] was required to file his claims no later than 2016. Because [Appellant] did not file suit until 2017, his claims are time-barred.

- 10 -

*Id.* at 32 (citation to record omitted).

We apply the following standard in reviewing the grant of summary judgment:

> [S]ummary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom[,] in a light most favorable to the non-moving party[,] and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. Because the claim regarding whether there are genuine issues of material fact is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Nicolaou v. Martin*, 195 A.3d 880, 891-92 (Pa. 2018) (some citations omitted).

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder.

*Welsh*, 154 A.3d at 390 n.5 (citation omitted).

The "admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion." *Buttaccio v. Am. Premier Underwriters*, 175 A.3d 311, 315 (Pa. Super. 2017) (citation omitted). "An abuse of discretion is not merely an error in judgment; rather, it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will."

- 11 -

*Scalla v. KWS, Inc.*, 240 A.3d 131, 136 (Pa. Super. 2020) (citations omitted).

This Court has explained that a

proponent of expert scientific evidence bears the burden of establishing all of the elements for its admission under Pa.R.E. 702,[5] which includes showing that the rule in *Frye* … is satisfied. *See Grady* [*v. Frito-Lay, Inc.*], 839 A.2d [1038,] 1045 [(Pa. 2003)]. *Frye*, which is now embodied in Pa.R.E. 702(c), instructs that the court should not admit scientific evidence during trial unless the underlying methodology has gained general acceptance in the scientific community. *See Commonwealth v. Topa*, … 369 A.2d 1277, 1281-82 (Pa. 1977). "*Frye* does not apply to every time science enters the courtroom[;] … *Frye* does apply, however, where an expert witness employs a novel scientific methodology in reaching his or her conclusion." *Folger ex rel. Folger v. Dugan*, … 876 A.2d 1049, 1058 (Pa. Super. 2005) (*en banc*) (citations omitted). One method to assess a *Frye* motion is to conduct a *Frye* hearing, although a hearing is not mandatory. *See id*[*.*]

_____

[5] Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) **the expert's methodology is generally accepted in the relevant field**.

Pa.R.E. 702 (emphasis added); *see also* Pa.R.E. 705 ("If an expert states an opinion the expert must state the facts or data on which the opinion is based.").

*Buttaccio*, 175 A.3d at 315 (footnote added).

This Court was presented with similar facts in *Labes*, *supra*. The appellant/plaintiff previously worked for the defendant/railway, and developed pain in his right knee which eventually required surgery. *Labes*, 863 A.2d at 1196-97. The appellant initiated a negligence action under FELA, and presented at trial evidence which included, *inter alia*:

> the testimony of his orthop[]edic surgeon, Dr. Esformes, in support of his causation argument that the repetitive nature of [appellant's] work had caused back and knee problems, including specifically the heavy lifting and extended periods of kneeling on hard and uneven surfaces which his job required.

*Id.* at 1197. At the close of the appellant's case, the trial court granted the defendant's motion for compulsory non-suit and dismissed the case. *Id.*

The *Labes* Court recognized that claimants under FELA have a relaxed standard of causation. *Id.* at 1198 (citing *Rogers*, 352 U.S. at 506-07 ("Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also … attribute the result to other causes, including the employee's contributory negligence.")). We explained that Pennsylvania Courts have

> consistently adhered to the *Rogers* standard, stating that **in only the most frivolous cases may the courts deny a FELA plaintiff his or her qualified right to a jury trial**. *Ciarolla v. Union Railroad Co.*, … 338 A.2d 669, 671 (Pa. Super. 1975). "[FELA] is to be liberally construed on behalf of injured workers,

with the result that often recovery will be proper under [FELA] when it would not be under the common law of negligence." ***Ignacic v. Penn Cent. Transp. Co.***, … 436 A.2d 192, 194 (Pa. Super. 1981) (citations omitted).

***Labes***, 863 A.2d at 1198 (emphasis added).

The Court concluded:

The trial court found "plaintiff merely showed it was **possible** that his injuries **may have** resulted from the defendant's negligence." Trial Court Opinion at 9 [(emphasis added)]. **Under FELA, however, such a showing is sufficient.** Indeed, a non-suit under FELA is justified only in those cases where there is a **zero probability** either of employer negligence or that any such negligence contributed to an employee's injury. ***See Pehowic*** [***v. Erie Lackawanna R. Co.***], 430 F.2d [697, 699-700 (3rd Cir. 1970) (stating "a trial court is justified in withdrawing [FELA] issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee."))].

***Labes***, 863 A.2d at 1200 (emphasis added). We held "the determination of negligence, if any, was for the jury" and reversed. ***Id.***

Although ***Labes*** involved the entry of non-suit, the reasoning is applicable here. We further observe:

Judges, both trial and appellate, have no special competence to resolve the complex and refractory causal issues raised by the attempt to link low-level exposure to toxic chemicals with human disease. On questions such as these, which stand at the frontier of current medical and epidemiological inquiry, **if experts are willing to testify that such a link exists, it is for the jury to decide whether to credit such testimony**.

***Trach v. Fellin***, 817 A.2d 1102, 1117 (Pa. Super. 2003) (*en banc*) (emphasis added; citation omitted).

Finally, we agree with Appellant that if the trial court had "questions regarding Dr. Levin's methodology, the proper procedure would have been to hold a *Frye* [h]earing," Appellant's Brief at 25, which Conrail had raised as an alternative to summary judgment. *See Buttaccio*, *supra* (regarding *Frye* hearings).

For these reasons, we are compelled to reverse the entry of summary judgment,[6] and remand for further proceedings, which may include a *Frye* hearing, consistent with this memorandum. In light of our disposition, we do not address Appellant's second issue.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 3/23/2023*

---

[6] To the extent Conrail argues Appellant's action was barred by the statute of limitations, this matter must be decided by the jury. Because "the determination concerning [a] plaintiff's awareness of [his or her] injury and its cause is fact intensive," it is "ordinarily a question for a jury to decide" when a plaintiff's action accrued, for purposes of the statute of limitations and accompanying "discovery rule." *Wilson v. El-Daief*, 964 A.2d 354, 362 (Pa. 2009).