J-A19019-16

2017 PA Super 12

| PAUL WELSH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION A/K/A AMTRAK | |
| | No. 1997 EDA 2015 |

Appeal from the Order Entered June 11, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 130902418

BEFORE: FORD ELLIOTT, P.J.E., OTT, J., and FITZGERALD, J.[*]

OPINION BY OTT, J.:                              **Filed January 17, 2017**

Paul Welsh, having brought a negligence action under the Federal Employers' Liability Act ("FELA"), appeals from the order entered June 11, 2015, in the Court of Common Pleas of Philadelphia County, that granted summary judgment in favor of National Railroad Passenger Corporation a/k/a/ Amtrak ("Amtrak"). Welsh claims the trial court erred in (1) failing to consider signed but unsworn statements from three present and/or former Amtrak police officers in support of Welsh's opposition to summary judgment, (2) treating Welsh's general denials and denials based on conclusions of law in response to Amtrak's summary judgment motion as admissions, and (3) granting summary judgment despite the existence of

_____

[*] Former Justice specially assigned to the Superior Court.

evidence of a reasonably unsafe work place in a FELA action.[1]  Based upon the following, we affirm.

The facts underlying this appeal were summarized by the trial court:[2]

> On August 16, 2012, beginning at 9 p.m., Mr. Welsh was assigned to surveillance at the Penn Coach Yards which are the train yards at 30th Street Station in Philadelphia.  According to Mr. Welsh, there was no briefing given for this assignment, or any discussion as to what would happen if there was any suspect activity in the Yard. The grounds of Penn Coach Yards were in poor condition and have very little artificial lighting. Depressions, gullies, debris, potholes, and uneven surfaces exist on the premises. The area around the Yard is also covered with stone ballast.
>
> During that rainy night, Mr. Welsh and another Amtrak officer followed a suspect for a period of time via a surveillance vehicle until contact was lost after the suspect headed toward a wire shed in the Yard. At some point after his fellow officer left the surveillance vehicle to run to the wire shed, Mr. Welsh also left the vehicle and ran toward the suspect. As he ran roughly seventy-five yards on ballast stones toward the suspect, Mr. Welsh felt a sharp pain in his lower back.
>
> The next day, the symptoms in his lower back became severe as he felt numbness from his lower back to his legs. Mr. Welsh alleges he suffered an aggravation of cervical disc disease and a lumbar disc herniation, for which he underwent surgery.

Trial Court Opinion, 10/6/2015, at 13-14.

---

[1] We have reordered Welsh's claims for purposes of our discussion.

[2] Although Welsh claimed injuries from two incidents in his complaint, one occurring on August 16, 2012 (Count I) and the other on August 5, 2011 (Count II), he only appeals from the grant of summary judgment as to Count I.  **See** Appellant's Brief, at 2.

The complaint provides no substantive details regarding either the happening of the accident or the injuries allegedly suffered by Welsh. The complaint states, in relevant part:

> 9. After there was some activity that required his attention, [Welsh] began to run in the yard [Amtrak's Penn Coach Yard] from his location to a storage facility, [Welsh] injured his back while in route.
>
> 10. The area where [Welsh] was required to perform his work was unsafe and not properly maintained and had not been inspected. All the acts and omissions giving rise to this claim occurred in Philadelphia, PA.

Complaint, 9/20/2013, Count I.

On September 11, 2014, Welsh was deposed. He gave the following description of the incident:

> Welsh: I know Joe jumped out of the back of the van and I was a second or two behind him.
>
> Q:[3] Okay.
>
> A: And then we ran through the compound to the – there's a rolling gate, a vehicle gate. Joe ran wide of the area so he was to my right maybe 50-foot and I was to the left and I was running more directly towards the – to the gate or where the gate would open up.
>
> Q: Okay. So up until this point, you're observing the suspect. Is he walking or running through the yard?
>
> A: He was walking.

---

[3] All questions are by defense counsel unless otherwise noted. All answers are by Welsh.

Q: Okay. And at some point, you said you jump out of the surveillance truck. Were there any issues when you jumped out? Did you feel any pain or –

A: No, I don't recall any pain jumping out of the vehicle. I recall, and my concern was still what was going on in the compound, but as I was running, I felt a sharp pain in my right lower back.

N.T. Deposition, 9/11/14, at 148.

Q: Okay. And at this point, he's restrained [the suspect] and under arrest, and Ron, Frank, and Joe [other officers] are all present there as well, correct?

A: Yes.

Q: Did you mention your injury to any of them?

A: No.

Q: Okay. And what is the sensation or the pain that you felt at that point?

A: There was a, I think it was, I know it was down the left leg, because I had problems lifting my left leg, but the pain was down the … center of my back.

Q: Okay. Well, how would you describe the pain?

A: The next day, it was severe.

Q: Okay. At the time of the injury, how would you describe it?

A: It was fine. I thought it was a 59-year-old guy with sore muscles. I didn't think anything of it.

Q: Okay. Did you trip at all while running?

A: No, I did not.

Q: Did you slip or twist in any way?

A: No, I don't believe I did. I mean I was running on a ballast and-

Q: And what were you wearing on this day?

A: The same shoes actually. The same low cut work boots that I chose.

*Id*. at 153-54.

Q: Okay. Were you aware of the conditions of Penn Coach yard? You said you had previously done surveillance there and that this was on some ballasts. Were you aware that [sic] any particular conditions of the ballasts?

A: Not any particular, I knew that, I know the coach yard is either ballasts, which is predominantly what it is and there's some blacktop area, but,

Q: Okay. And is it uneven, are there spots where it's pitched one way or the other, or how would you describe the area of the yard where you were in?

A: It's an area where vehicles travel back and forth. It's not made for pedestrian traffic, let alone running.

*Id*. at 175-76.[4]

Q: Okay. What do you believe AMTRAK could have done to prevent this injury?

A: Well, the area itself is on a good day is not conducive to walking, let alone running. I don't know how they could make that safer. And if the area was lit better, it only had, you can

---

[4] Immediately after this exchange, Welsh was shown photographs of the area where the surveillance van was parked and where the arrest occurred. Those photographs are not found in the certified record. The photographs appended to Welsh's response to the motion for summary judgment do not show what was described at the deposition.

see the poles that the lights were on. And other than that, it's just whatever city lights would light up the area there.

Q: Okay. Do you believe there's anything you could have done to prevent this injury?

A: Not going to work that day. No. No, I don't.

*Id.* at 181-82.

**AFFIDAVITS**

As noted above, Welsh now raises three issues in support of his claim that the trial court erred in granting Amtrak's motion for summary judgment.[5] Welsh first contends the trial court erred in failing to consider

---

[5] This Court's scope and standard of review of a trial court's order granting summary judgment is well-settled:

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a

*(Footnote Continued Next Page)*

signed but unsworn statements from three Amtrak police officers, all asserting the Penn Coach Yard was an unsafe workplace. The trial court noted that it dismissed the use of the affidavits because they failed to state they were made under penalty of perjury pursuant to 18 Pa.C.S. § 4904.

With respect to a motion for summary judgment, the "record" as used in both the Pennsylvania and Philadelphia rules, is defined as including any affidavits. **See** Pa.R.C.P. 1035.1(2). **See also**, Pa.R.C.P. 1035.4 (governing affidavits supporting or defending a motion for summary judgment).

Welsh "submitted three signed statements from current and former Amtrak Police Officers that were familiar with the walking and ground conditions in Amtrak's Penn Coach Yard." Appellant's Brief at 18.[6] The Note to Rule 1035.1 refers to Pa.R.C.P. 76 for the definition of "affidavit." Neither Rule 1035.1 nor Rule 76 refer to signed statements. An affidavit is specifically defined as:

*(Footnote Continued)* ————————————

> fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Gerber v. Piergossi*, 142 A.3d 854, 858 (Pa. Super. 2016) (citation omitted).

[6] The three Amtrak officers are Dan Iacona, Douglas Paige, and John Cullinan. Welsh also submitted a similar signed statement that included photographs purportedly showing the conditions at the Penn Coach Yard. The instant argument only addresses the three statements of the other officers, not Welsh's. This appears to be because Welsh's statement addresses the injury allegedly suffered regarding Count II of the complaint, which is not subject to this appeal.

A statement in writing of a fact or facts, signed by the person making it, that either (1) is sworn to or affirmed before an officer authorized by law to administer oaths, or before a particular officer or individual designated by law as one before who, it may be taken, and officially certified under seal of office, or (2) is unsworn and contains a statement that it is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Pa.R.C.P. 76. Definitions.

None of the statements complies with the requirements found in Rule 76. As the trial court found, "The documents signed by Mr. Welsh and the three other Amtrak police officers were not 'affidavits' because they did not include a notary's jurat; nor were they made subject to the penalties of 18 Pa.C.S. § 4904." Trial Court Opinion at 6.

While all statements claim to have been made under oath, the Appellant's brief clarifies that the oath referred to is simply the oath taken by an Amtrak police officer to "uphold the tenants [sic] of justice." Appellant's Brief at 19. The requirements of an affidavit are clearly stated in the Rules of Civil Procedure and those requirements do not contain an exemption for any class of persons or jobs that have their own oaths. Welsh has provided no authority to support his contention that police officers, or any other such oath taker, are exempt from the straight-forward requirements for an affidavit. Therefore, because the statements do not comply with the requirements to be considered an affidavit, and the rules do not allow consideration of signed statements, the trial court committed no

abuse of discretion or error of law in refusing to consider them. Welsh is not entitled to relief on this issue.

**GENERAL DENIALS**

Next, Welsh asserts the trial court erred in treating the general denials and denials based on conclusions of law in response to the motion for summary judgment as admissions. Here, he raises two sub-arguments, (1) the trial court ignored the dictates of Pa.R.C.P. 1029(e), which allows general denials, and (2) the trial court unfairly punished Welsh for failing to cite to the record despite Amtrak's similar failings.[7]

Welsh asserts the trial court improperly rejected the general denials in violation of Pa.R.C.P. 1029(e), which he correctly notes allows for the use of general denials. Specifically Rule 1029(e) states:

> In an action seeking monetary relief for bodily injury, death, or property damage, averments **in a pleading** to which a responsive pleading is required may be denied generally except the following averments of fact which must be denied specifically:

Pa.R.C.P. 1029(e) (emphasis added).[8]

Rule 1029(e) clearly applies to pleadings. A pleading is defined in Pa.R.C.P. 1017 as:

---

[7] We have reordered the issues.

[8] The exceptions do not apply to the instant matter.

(a) Except as provided by Rule 1041.1[9], the pleadings in an actions are limited to

(1) a complaint and an answer thereto,

(2) a reply if the answer contains new matter, a counterclaim or a cross-claim,

(3) a counter-reply if the reply to a counterclaim or cross-claim contains new matter,

(4) a preliminary objection and a response thereto.

Pa.R.C.P. 1017(a)(1)-(4).

A motion for summary judgment is not a pleading; therefore, Pa.R.C.P. 1029(e) does not apply to this matter. The trial court correctly applied Phila.Civ.R. 1035.2 which forbids the use of general denials and requires specific denials with reference to the record. Accordingly, this argument is unavailing and Welsh is not entitled to relief.

Welsh also claims Amtrak failed to abide by Phila.Civ.R. 1035.2(a)(2),[10] which similarly requires reference to the record to support the allegations contained within the motion for summary judgment, yet the trial court failed to apply the rule to Amtrak. "Such failure to properly apply the Local Rules to this matter to both sides created a result based on technicality instead of the facts and law in the case." Appellant's Brief at 24.

---

[9] Rule 1041.1 applies to asbestos litigation.

[10] *See also* Pa.R.C.P. 239.7, requiring promulgation by each trial court of local rule 1035.2.

Both the Pennsylvania (Pa.R.C.P.) and Philadelphia Rules of Civil Procedure (Phila.Civ.R.) are clear in what is required to respond properly to the allegations presented in a motion for summary judgment. The Pennsylvania rule states:

> (a) Except as provided in subdivision (e) [not applicable to this matter], the adverse party may not rest upon the mere allegations of denials of the pleadings but must file a response within thirty days after service of the motion identifying
>
> > (1) one or more issues of fact arising from evidence in the record controverting the evidence in support of the motion or from a challenge to the credibility of one or more of the witnesses testifying in support of the motion, or
> >
> > (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.
>
> (b) An adverse party may supplement the record of set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence.
>
> Note: Procedural requirements with respect to argument and briefs are governed by local rule.

Pa.R.C.P. 1035.3(a)(1), (2).

Additionally, the Note to Pa.R.C.P. 1035.2 states: "Rule 239.7 requires every court to promulgate Local Rule 1035.2(a) describing the local court procedure governing motions for summary judgment."

The Philadelphia Rules of Civil Procedure have similar substantive requirements but also direct the respondent as to the proper form of response. The Philadelphia Rule states, in relevant part:

> **Response to Motion for Summary Judgment**. The adverse party or parties must file a response to the motion for summary judgment within thirty (30) days of the service of the motion, as provided by Pa.R.C.P. 1035.3. The response to the motion shall be divided into paragraphs, numbered consecutively, corresponding to the numbered paragraphs of the motion for summary judgment. The response shall state whether each of the allegation is admitted or denied. No general denial is acceptable. The factual reasons for the denial or dispute must be specifically stated and the "record," (as that term is defined in Pa.R.C.P. 1035.1) supporting the denial or dispute must be attached as an exhibit. A response may also include additional allegations demonstrating any genuine issue of material fact, in which event the responding party must reference and attach a copy of the "record," (as that term is defined in Pa.R.C.P. 1035.1) which demonstrates the existence of a genuine issue of material fact.

Phila.Civ.R. 1035.2(a)(4).

The rules of civil procedure require both movant and respondent to supply specific citation to the record to support averments. In support of this argument Welsh cites only to paragraph 109 of the motion for summary judgment, which states:

> Because the maintenance and inspection of an Amtrak rail yard is a subject not within the ken of the average juror, an expert is needed for the plaintiff to present evidence of a breach of duty by Amtrak.

Appellant's Brief at 24.

Welsh has not explained how Amtrak's failure to cite to the record regarding its assertion that Welsh needed to provide expert testimony has prejudiced him. The trial court made no mention of the lack of such expert testimony as a reason why summary judgment was granted in favor of Amtrak. The averment of paragraph 109 is not the legal lynchpin of

- 12 -

Amtrak's right to summary judgment. Even if we reject this averment, Welsh's failure to properly respond to the other averments provide more than sufficient grounds to rule in favor of Amtrak.

Nonetheless, our review of the certified record demonstrates that Amtrak provided ample citation to the factual record in the initial paragraphs of the motion. Paragraphs 100 and 101 of the motion for summary judgment set forth the federal and state requirements to provide expert testimony to establish liability for circumstances beyond the common knowledge of the average juror. Also, many of Amtrak's averments address Welsh's failure to provide any evidence, such as:

> 83. Despite generalized allegations in his Complaint, [Welsh] has offered no evidence demonstrating how Amtrak was negligent or in any way legally responsible for the alleged incident.
>
> 84. Indeed, there is not a shred of evidence that any "incident" occurred.

Amtrak Motion for Summary Judgment, ¶¶ 83, 84 (emphasis in original).

Even though the factual averments in these two paragraphs contain no citation to the record, when Amtrak asserts the record is devoid of certain evidence, logically there can be no specific citation to the record.

Further, other than pointing to ¶109, Welsh has failed to indicate what other "facts" were left unverified by citation to the record and how he was prejudiced by that alleged error.

Finally, Welsh claims that any deficiency in the paragraph by paragraph responses to the averments of the motion for summary judgment

were corrected by the inclusion of the Counter Statement of Facts in his response. The counter statement is a fifty-paragraph recitation of various facts, many of which contain citations to the record. Paragraphs 30-50 address the incident in the Penn Coach Rail Yard, which is the subject of this appeal. However, Welsh does not link any of the counter facts to any particular averment of the motion for summary judgment. This failure would require the trial court to guess at which averments in the motion for summary judgment have been addressed. The rules of civil procedure provide for a straightforward method of answering a motion for summary judgment that eliminates any such need for guesswork. We will not overrule a trial court for failure to engage in such a speculative procedure. Accordingly, Welsh is not entitled to relief on this claim.

**OTHERWISE SUFFICIENT EVIDENCE TO SUBMIT TO A JURY**

In his final argument, Welsh claims the trial court erred in granting summary judgment because even without the above disputed facts, he provided sufficient evidence to create triable issues. We disagree.

The trial court correctly recited the legal standards applicable to a FELA case.

> FELA states that "[e]very common carrier by railroad … shall be liable in damages to any person suffering injury while he is employed by such carrier … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C.A. § 51.

> The state and federal courts have concurrent jurisdiction over FELA cases. "FELA cases adjudicated in state courts are subject

to state procedural rules, but the substantive law governing them is federal." Thus, in the case *sub judice*, we must be guided in our determination of whether Appellant presented a question for a jury by the standard which the United States Supreme Court set forth:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence played any part at all in the injury or death.

Our Court has consistently adhered to the **Rogers** standard, stating that in only the most frivolous cases may the courts deny a FELA plaintiff his or her qualified right to a jury trial.

"[FELA] is to be liberally construed on behalf of injured workers, with the result that often recovery will be proper under [FELA] when it would not be under the common law of negligence." "[T]he test of a case for the jury under the FELA 'is simply whether the proofs justify with reason the conclusion that employer negligence played *any* part, even the slightest, in producing the injury or death for which damages are sought.' " **Ciarolla**, **supra** at 672 (emphasis added) (citation omitted). "To deprive railroad workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."

**Labes v. New Jersey Transit Rail Operations, Inc.**, 863 A.2d 1195, 1198 (Pa. Super. 2004) (case citations omitted, paragraph break added). In FELA cases, "the plaintiff must prove the common law elements of negligence: duty, breach, foreseeability, and causation." **Manson v. Southeastern Pennsylvania Transp. Authority**, 767 A.2d 1, 3 (Pa. Cmwlth. 2001).

Railroad companies owe their employees a continuing duty to use care in order to provide them with a reasonably safe place to work. ***Kimbler, v. Pittsburgh & L.E.R. Co.***, 331 F.2d 383, 385 (3ʳᵈ Cir. 1964).

Trial Court Opinion, 10/6/2015, at 1-3.

By rejecting the so-called affidavits of the three Amtrak police officers, and determining Welsh failed to respond properly to Amtrak's averments in the motion for summary judgment thereby admitting said averments, Welsh was left with no evidence to support his claim. Nonetheless, here, Welsh argues:

> In this matter, the Trial Court determined that no evidence was presented to establish the slightest possibility that [Welsh] was not provided a reasonably safe work place. The Court erred in making this conclusion. [Welsh] submitted deposition testimony to establish that the supervisor in charge of the surveillance team conducted no meeting prior to sending the team out to coordinate the arrest. This failure led to [Welsh] to run 75 yards on uneven ballast with debris in the dark to assist in an arrest that was being done by other officers. Running on ballast (stones) is not a reasonably safe activity. Running on ballast (stones) in a poorly lit area with industrial debris makes the work activities more problematic. Mr. Welsh stated that, the area was poorly lit and "the area on a good day was not conducive for walking let alone running["]. When asked what Amtrak could have done to prevent the accident, Mr. Welsh stated, make the area safer.
>
> The photographs taken by [Welsh] in his site inspection show the area that Mr. Welsh had to run as uneven, with areas covered in stone and some areas that are bare. The ground is also covered with industrial debris. This evidence along with Mr. Welsh's testimony is sufficient to defeat Summary Judgment in a Federal Employers' Liability Act case.

Appellant's Brief at 12.

If Welsh needed the trial court to consider such facts, the response to the motion for summary judgment needed to place those facts properly before the trial court by specifically answering the averments of that motion. Instead, Welsh attempts to rely only on the counterstatement of facts. We have already found no error in the trial court's rejection of them.

Additionally, the trial court correctly rejected the use of the scene photographs as being unauthenticated. The photographs were not found in the certified record prior to their attachment to Welsh's response to the motion for summary judgment. Nothing in the response to the motion for summary judgment explains the provenance of the photos. Accordingly, the trial court did not err in rejecting them. Also, there is no evidence that a failure to hold a meeting prior to the surveillance caused the surveillance van to be parked in any specific area that forced Welsh to run 75 yards. The photographs depict mud puddles and similar dips in the ground, as well as randomly piled wood, stray wire lying on the ground and other such detritus. Welsh's deposition testimony indicated only that he was running on ballast[11]

---

[11] "Ballast" is not defined in the certified record. The common definition of ballast is, "Coarse gravel or crushed rock laid to form a bed for roads or railroads." American Heritage® Dictionary of the English Language, Fifth Edition. (Copyright © 2016 by Houghton Mifflin Harcourt Publishing Company. Published by Houghton Mifflin Harcourt Publishing Company.) Given that the common definition makes it clear that ballast is routinely used to form railroad beds, we will assume that Amtrak was well aware that the Penn Coach Yard was primarily ballast, as testified to by Welsh. **See** Deposition, **supra**, at 175.

when he felt the pain in his back. Having never claimed the puddles, dips, wood or trash caused his injury, those photograph are irrelevant.

Essentially, all that remains of Welsh's testimonial evidence is that he felt a pain in his back when he ran on ballast. There is no proof of record that having ballast in a railyard constitutes an unsafe work place or, even if the workplace was unsafe, that the condition actually caused Welsh to suffer a herniated disc. The evidence, viewed in the light most favorable to Welsh as the responding party, demonstrates only that Welsh initially felt his back pain while running after a suspect on ballast. As such, there is insufficient evidence to create a viable issue that Amtrak provided Welsh with an unsafe work place. In light of the foregoing, Welsh is not entitled to relief.

Judgment affirmed.

Ford Elliott, P.J.E., joins this opinion.

Fitzgerald, J., concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/17/2017</u>