2024 PA Super 116

| | | |
|---|---|---|
| LAURA AZARAVICH AS ADMINISTRATOR OF THE ESTATE OF STEVEN AZARAVICH, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : : | |
| v. | : : : | No. 44 MDA 2023 |
| WILKES-BARRE HOSPITAL COMPANY, LLC D/B/A WILKES-BARRE GENERAL HOSPITAL, NOEL ESTIOKO, M.D., DANA SIMON, P.A., DANIEL MAY AND/OR CRISIS RESPONSE AND RECOVERY CENTER OF NEPA AND/OR COMMUNITY COUNSELING SERVICES | : : : : : : : : : | |

Appeal from the Order Entered December 20, 2022
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2017-08531

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

OPINION BY NICHOLS, J.:                        **FILED: JUNE 5, 2024**

Appellant Laura Azaravich, Administrator of the Estate of Steven Azaravich (Decedent), appeals from the order granting the motions for summary judgment filed by Appellees Wilkes-Barre Hospital Company, LLC D/B/A Wilkes-Barre General Hospital, Daniel May, Crisis Response and Recovery Center of NEPA, and Community Counseling Services (collectively "Appellee Hospital"), Noel Estioko, M.D., and Dana Simon, PA.  Appellant

_____

[*] Former Justice specially assigned to the Superior Court.

contends that there are genuine issues of material fact that preclude the entry of summary judgment. Appellant also argues that the trial court erred in its application of the immunity provision of the Mental Health Procedures Act[1] (MHPA) to Appellant's corporate negligence claim. We reverse and remand for further proceedings.

The underlying facts of this case are well known to the parties. **See** Trial Ct. Op., 12/20/22, at 2-13. Briefly, on July 20, 2015 at 12:14 p.m., Decedent called 911 and reported that he was having suicidal thoughts. Pittson City police officers went to Decedent's home and after Decedent informed the officers that he had thoughts of hanging himself, the officers transported Decedent to Wilkes-Barre General Hospital (WBGH). Appellant checked himself into the emergency department at WBGH. Several WBGH staff members evaluated Decedent. Appellee Simon, a physician assistant (PA), documented that Appellant was experiencing depression and suicidal ideation at 1:20 p.m. **See** Appellee Hospital's S.R.R. at 254a-55a (WBGH's electronic medical records for Decedent).[2] Appellee Simon entered an order to detain Decedent at 1:32 p.m. **See id.** at 256a. At 3:50 p.m., Lorna Ruckle, a registered nurse, assessed Decedent with a "high risk" of suicide. **See id.** at 257a. Appellee May, a crisis clinician, evaluated Decedent at 5:40 p.m.

_____

[1] 50 P.S. §§ 7101-7503.

[2] We may cite to the parties' initial or supplemental reproduced record for the parties' convenience.

- 2 -

*See id.* at 277a (May's crisis assessment form). May's handwritten notes indicate that Decedent had reported that he did not have an intent to hang himself, did not have current thoughts of harming himself, and wanted outpatient treatment. *See id.* at 273-74a.

May consulted with Jyoti Shah, M.D., the on-call psychiatrist. May did not inform Dr. Shah of Nurse Ruckle's risk of suicide assessment performed earlier that day and May only reported Decedent's symptoms as he had assessed them. *See* R.R. at 3936a, 3938a-39a, 3943a, 3945a-46a, 3953a-54a (May's deposition). Dr. Shah does not have access to WBGH's computer system to check medical records,[3] and she is dependent on the crisis clinician to provide her with full, complete, and accurate information about a patient. *See* R.R. at 14188a-89a, 14195a (Dr. Shah's deposition). Dr. Shah approved releasing Decedent from WBGH and ordered outpatient treatment for Decedent. *See* Appellee Hospital's S.R.R. at 258a, 277a.

Decedent was discharged from WBGH at 6:32 p.m. with a taxi voucher and a call was scheduled for the following day to schedule outpatient psychiatric treatment for Decedent. *See id.* at 257a-58a. Appellee Estioko was working as a physician in the emergency department at WBGH during the time Decedent was there. *See* R.R. at 4237a-38a. Although WBGH's records state that a physician treated and evaluated Decedent and Appellee Estioko

---

[3] The computer system that WBGH was using in 2015 is known as the "IBEX system".

electronically signed Decedent's chart, Appellee Estioko testified in his deposition that he did not personally evaluate Decedent on July 20, 2015. *See id.* at 4345a-46a, 4365a-66a; Appellee Hospital's S.R.R. at 258a.

Tragically, Decedent took his own life two days later by hanging himself with an electrical cord. Decedent's parents, Allan Azaravich and Diane Azaravich, acting both individually and on behalf of Decedent's estate, commenced this action by filing a complaint on July 19, 2017. Both Allan Azaravich and Diane Azaravich passed away during the pendency of this matter. The register of wills subsequently granted letters of administration for Decedent's estate to Appellant, Decedent's sister. Appellant filed a second amended complaint on October 31, 2017. Therein, Appellant raised five claims: medical negligence against all Appellees, corporate negligence against Appellee Hospital, wrongful death against all Appellees, a survival action against all Appellees, and a claim for punitive damages against all Appellees.[4] *See* R.R. at 42a-55a. Appellant asserted that Appellees' conduct and the treatment of Decedent was grossly negligent and/or reckless. *See id.*

The parties filed cross-motions for summary judgment. Appellant also filed exhibits with the trial court in support of her motions and in opposition to Appellees' motions. *See, e.g.*, R.R. at 22224a-38a (the table of contents

---

[4] The parties stipulated to the dismissal of other defendants to this action; and on August 23, 2022, the trial court granted summary judgment in favor of defendant Richard Merkel, M.D. *See* Trial Ct. Op., 12/20/22, at 2 n.1. Appellant has not appealed from the August 23, 2022 order.

for Appellant's exhibits). On December 20, 2022,[5] the trial court issued an order and opinion granting Appellees' motions for summary judgment, denying Appellant's motions for summary judgment, and dismissing all claims against Appellees with prejudice. Appellant filed a timely appeal. The trial court did not order Appellant to comply with Pa.R.A.P. 1925(b) but filed a Rule 1925(a) opinion adopting its December 20, 2022 opinion and order. *See* Trial Ct. Op., 1/17/23.

On appeal, Appellant raises two issues:

1. Where, as here, the trial court grants summary judgment in favor of [Appellees] and against [Appellant] thereby putting [Appellant] out of court, and the trial court's stated basis for the grant of summary judgment is that [Appellant] failed to establish that the [Appellees] acted in [a] grossly negligent manner, despite the fact that [Appellant] produced no less than six separate expert reports detailing the grossly negligent behavior of [Appellees], which expert reports and opinions the trial court chose to assail and thereafter ignore, whether the trial court committed an abuse of discretion or error of law in granting summary judgment against [Appellant], the non-moving party, in whose favor the trial court was required to be factually biased, such that this Court should reverse the trial court's decision granting summary judgment against [Appellant] and remand this case to the trial court for a trial before a jury?

2. Where, as here, the trial court refused to apply the negligence standard as opposed to the gross negligence standard to the non-mental health claims such as the severe deviation of the credentialing, staffing, and others, whether the trial court

---

[5] The trial court's opinion and order are both dated December 19, 2022, but the trial court notified the parties of the entry of its opinion and order on December 20, 2022. *See* Pa.R.A.P. 108(b); Pa.R.C.P. 236(b). We have amended the caption accordingly.

committed an abuse of discretion or an error of law, such that this court is required to reverse the trial court's December [20], 2022 order granting summary judgment and remand it to the trial court for trial before a jury.

Appellant's Brief at 7-8 (formatting altered).

**Standard of Review**

Our standard of review is *de novo* and our scope of review is plenary. Summary judgment is appropriate where there is no genuine issue of material fact as to a necessary element of a cause of action that can be established by discovery or expert report. Pa.R.C.P. No. 1035.2(1). In reviewing an order granting a motion for summary judgment, an appellate court must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party.

*Liberty Mut. Grp., Inc. v. 700 Pharmacy, LLC*, 270 A.3d 537, 547-48 (Pa. Super. 2022) (some citations omitted and formatting altered).

Where the nonmoving party bears the burden of proof on an issue, [s]he may not merely rely on [her] pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to [her] case and on which [s]he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

*Finder v. Crawford*, 167 A.3d 40, 44 (Pa. Super. 2017) (citation omitted).

Further, our Supreme Court has held:

The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. [*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010)]. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt. This Court has held that the summary judgment standard that a trial court must view the facts, and all reasonable

- 6 -

inferences, in a light most favorable to the non-moving party "clearly includes all expert testimony and reports submitted by the non-moving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot *sua sponte* assail them in an order and opinion granting summary judgment." ***Summers***, 997 A.2d at 1161. An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion. ***Id.*** at 1159.

***Bourgeois v. Snow Time, Inc.***, 242 A.3d 637, 650 (Pa. 2020) (some citations omitted and some formatting altered); ***see also Fine v. Checcio***, 870 A.2d 850, 862 (Pa. 2005) (emphasizing that "it is not the court's function upon summary judgment to decide issues of fact, but only to decide whether there is an issue of fact to be tried" (citation omitted)).

Additionally, the ***Bourgeois*** Court explained:

Any dispute over what . . . standards [of care and/or conduct] are [applicable to the defendant] goes to the weight and credibility of [the expert's] testimony, which is not a proper consideration at the summary judgment stage as courts must view the evidence in a light most favorable to the non-moving party; instead, it should be resolved by a factfinder at trial.

***Bourgeois***, 242 A.3d at 658-59 (citation omitted); ***see also Summers***, 997 A.2d at 1161 (stating that "while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment; rather, such determinations reside in the sole province of the trier of fact" (citations omitted)).

Rule of Civil Procedure 1029 provides that, subject to certain exceptions, any general denials or demands for proof in a responsive pleading are treated as admissions. Pa.R.C.P. 1029(b). However, this Court has observed that

- 7 -

"[a] motion for summary judgment is not a pleading[]" as defined in Pa.R.C.P. 1017(a). **Welsh v. Nat'l R.R. Passenger Corp.**, 154 A.3d 386, 392 (Pa. Super. 2017). Therefore, the Rules of Civil Procedures that govern pleadings, including Pa.R.C.P. 1029, do not apply to motions for summary judgment. **Id.**

## Medical Negligence

In her first issue, Appellant argues that the trial court erred in granting summary judgment in favor of Appellees because the trial court failed to view the evidence in the light most favorable to Appellant as the non-moving party. Appellant's Brief at 17-25 (citing, *inter alia*, **Bourgeois**, 242 A.3d at 652). Specifically, Appellant contends that the trial court erred by accepting the moving parties', *i.e.* Appellees, summary of the factual history of the case. **Id.** at 19. Further, Appellant claims that trial court erred by "assail[ing Appellant's] experts' credibility" because her experts partially relied on allegations of negligence in unrelated litigation against Appellee Estioko and because the trial court erroneously concluded that the experts' conclusions were not supported by the record, and the experts did not understand the standard of gross negligence. **Id.** at 19-24. Therefore, Appellant concludes that the trial court's orders granting Appellees' motions for summary judgment should be reversed and this case remanded for trial. **Id.** at 24-25.

Generally, to establish a *prima facie* cause of action for medical negligence, a plaintiff must demonstrate the following:

> (1) a duty owed by the physician to the patient; (2) a breach
> of that duty; (3) that the breach of duty was the proximate

cause of the harm suffered by the patient; and (4) that the damages suffered were a direct result of that harm.

Determining whether there was a breach of duty involves a two-step process: first, a determination of the standard of care, and second, a determination of whether the defendant physician met that standard. To show causation, the plaintiff must show that the [defendants'] failure to exercise the proper standard of care caused the plaintiff's injury.

***Mazzie v. Lehigh Valley Hosp. - Muhlenberg***, 257 A.3d 80, 87 (Pa. Super. 2021) (citations omitted and formatting altered).

A hospital may be liable for "negligence of its personnel" under a theory of *respondeat superior*. ***Thompson v. Nason Hosp.***, 591 A.2d 703, 707 (Pa. 1991) (citation omitted). Further, "[a] hospital may be held vicariously liable for the acts of another health care provider through principles of ostensible agency" if certain facts are established. 40 P.S. § 1303.516(a).

Section 302 of the MHPA describes the circumstances under which a mentally disabled person may be subject to an emergency involuntary examination:

**(a) Application for Examination.**—Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

\* \* \*

**(b) Examination and Determination of Need for Emergency Treatment.**—A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled . . . and in need of immediate treatment. If it is determined that the person is severely mentally

disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. . . .

50 P.S. § 7302(a), (b).

Section 114 of the MHPA states:

In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or any of its consequences.

50 P.S. § 7114(a); *see also Dean v. Bowling Green-Brandywine*, 225 A.3d 859, 863 (Pa. 2020) (explaining that "Section 114 of the MHPA insulates certain individuals from claims of ordinary negligence arising from treatment under the act").

In this context, "gross negligence" means "a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Albright v. Abington Memorial Hosp.*, 696 A.2d 1159, 1164 (Pa. 1997) (citation omitted); *see also Bourgeois*, 242 A.3d at 646 (noting that "grossly negligent conduct flagrantly departs from the ordinary standard of care" (citation omitted)).

- 10 -

Additionally, our Supreme Court has held that "gross negligence does not rise to the level of the intentional indifference or conscious disregard of risks that defines recklessness, but it is defined as an extreme departure from the standard of care, beyond that required to establish ordinary negligence, and is the failure to exercise even scant care." *Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 20 (Pa. 2019) (citations omitted and formatting altered).

Our Supreme Court has explained

While it is generally true that the issue of whether a given set of facts satisfies the definition of gross negligence is a question of fact to be determined by a jury, a court may take the issue from a jury, and decide the issue as a matter of law, if the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence.

*Albright*, 696 A.2d at 1164-65 (citations omitted).

Here, the trial court explained:

[fn2] Although mindful of the requirement of an autonomous judicial expression of its reasons for ruling on a summary judgment motion, the court has determined that the relevant medical records are not in dispute. Accordingly, for ease of reference and because [Appellant] has "admitted" to the document-derived assertions, the court is treating the document-derived assertions as stipulated fact and has largely adopted the factual background as set forth in the Hospital['s] motion, as well as some assertions set forth in Dr. Estioko and PA Simon's motion, for the same reason. To the extent that [Appellant] disagrees with any characterization of the records, the court takes note of her boilerplate responses wherein she frequently states: "All other allegations and insinuations are denied. Strick [sic] proof is demanded. For a full and complete factual background the court should look at [Appellant's] expert reports which has [sic] the factual background cited to the bates stamp documents all of which are filed of record."

- 11 -

> Notably, however, [Appellant] offers no "counter-statement" of the facts and rarely indicates to which of her several expert reports the court should look. Lastly, [Appellant] has not asserted any claims regarding the medical records.

> *    *    *

> In the present case, there are no true disputed issues of material fact. Perhaps the best evidence of this is that each [Appellee] has filed a motion for summary judgment against [Appellant], and [Appellant] has likewise filed a motion for summary judgment against each [Appellee] (except Dana Simon, PA). As set forth above, the facts are primarily gleaned from the medical records which document the care received by [Decedent] while at [WBGH] on July 20, 2015. Where the parties differ, however, is on their characterization of that care, and on the legal implications of their characterizations.

> *    *    *

> Although [Appellant] and some of her experts have in their submissions used the term "willful misconduct," no serious argument can be made that any of the acts or omissions of the various defendants can be fairly characterized as such. Accordingly, the court will focus its analysis on the concept of "gross negligence" as it has been interpreted and applied in appellate cases involving § 7114(a).

> *    *    *

> Importantly (and without restating herein the lengthy facts involved in **Albright**), for purposes of ruling on the instant motions for summary judgment, this court is of the opinion that the conduct of the defendant hospital in **Albright** was more egregious than the conduct of any of [Appellees] in the case at bar. For example, the **Albright** Court determined that the hospital was not liable after involuntarily committing and releasing a [woman] who perished in a house fire within 90 days of her release. In reaching its determination the **Albright** Court concluded that the hospital was aware that she was not taking her medication, missed her December 8th appointment, had a breakdown, was becoming manic, was walking around at night, left a dinner burn[ing] in the oven with smoke pouring into the house, was chain smoking, there were cigarette burns on the new couch and that her family repeatedly called the hospital and MCES

- 12 -

for assistance to no avail. Further, the hospital did not take steps to transfer her commitment [to another facility] pursuant to [50 P.S. § 7306] and informed the family that the likelihood of getting a [Section] 302 commitment was not strong. The [Supreme] Court affirmed summary judgment in that the facts did not constitute gross negligence. *Id.* at 1167.

*   *   *

The court understands that [Appellant] has relied heavily on her numerous expert reports which are critical of the care rendered by each of the [Appellees] and which have the terms "gross negligence" and "reckless" peppered throughout the reports to argue that she has produced sufficient evidence to have the issue of "gross negligence" submitted to a jury. In fact, her briefs are almost exclusively excerpts of the reports with only three or four pages of "legal" argument. She does not even cite *Albright* or try to distinguish it or any of the MHPA cases which have applied § 7114(a) in a summary judgment context. Her experts spend a tremendous amount of time criticizing the credentialing of Dr. Estioko and reviewing documents and court filings related to two other Luzerne County lawsuits (*Scott* and *Ford*) in which he was a defendant, but which have nothing factually in common with the present case. In fact, the events forming the basis of the *Ford* case post-date those in the present case. It is undisputed that in the instant matter, Dr. Estioko never even saw [Decedent]. The fact that he failed to do so even though hospital policy may have required him to is one of the fair criticisms leveled at him based on the actual facts of this case. The court finds [Appellant's] experts' reliance on documentation from *Scott* and *Ford* to be misplaced and irrelevant for purposes of analyzing whether § 7114(a) provides immunity to Dr. Estioko in this case.

The court also acknowledges that [Appellant's] experts are critical of the various [Appellees] in additional ways. For example, she has produced expert reports which are critical of the lack of experience and/or training of PA Simon and Daniel May, are critical of WBGH's IBEX system and the way information was shared (or not) with Dr. Shah and other providers on July 20, 2015, and are critical of the hospital policies (or lack thereof) for handling patients with suicidal ideations who present to the ER. The court is not convinced, however, that any of the criticisms that are actually based upon facts of the case, as set forth at the beginning of this opinion, rise above the level of ordinary negligence for purposes of the MHPA. To the extent that the

- 13 -

expert opinions rely on irrelevant considerations or facts which are not part of the record and/or which exhibit a lack of understanding of the meaning of "gross negligence" as it has been interpreted for purposes of § 7114(a), the court is of the opinion that it does not have to accept them as conclusive or sufficient to meet [Appellant's] burden of proof.

Applying the **Albright** definition of "gross negligence" to the circumstances of the present case, the court cannot conclude, as a matter of law, that the "facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference" on the part of any [Appellee] or that the behavior of . . . any one of them was "flagrant, grossly deviating from the ordinary standard of care." Accordingly, the court finds that the immunity provisions of § 7114(a) of the MHPA apply, and grants the motions for summary judgment filed by [Appellees] and denies the motions for summary judgment filed by [Appellant].

Trial Ct. Op., 12/20/22, at 3 n.2, 15-22 (some citations omitted and some formatting altered).[6]

After review, we are constrained to disagree with the trial court. When the record is reviewed in the light most favorable to Appellant as the non-moving party, the evidence established that there are genuine issues of material fact regarding whether Appellees grossly deviated from the standard of care. **See Bourgeois**, 242 A.3d at 650; **Albright**, 696 A.2d at 1164. Further, when an expert's conclusions are sufficiently supported by the record, the trial court "cannot *sua sponte* assail them in an order and opinion granting

_____

[6] We note that the trial court also cited **Hancock v. Friends Hosp.**, 1666 EDA 2014, 2015 WL 7430609 (Pa. Super. filed Mar. 9, 2015) (unpublished mem.) in support of its conclusions. **See** Trial Ct. Op., 12/20/22, at 19-20. However, because **Hancock** is an unpublished decision by this Court that was filed prior to May 1, 2019, it cannot be cited or relied upon even as persuasive authority. **See** Pa.R.A.P. 126(b).

- 14 -

summary judgment." ***Bourgeois***, 242 A.3d at 650 (citation omitted); ***see also id.*** at 652. Because a dispute over the applicable standard of care goes to the expert's weight and credibility, it is not a proper consideration at the summary judgment level and must instead be decided by the finder of fact at trial. ***See id.*** at 658-59; ***see also Summers***, 997 A.2d at 1161.

First, we cannot agree with the trial court's conclusion that Appellant has admitted the factual assertions in Appellees' motions for summary judgment because Appellant's responses included "boilerplate" denials and demands for proof. ***See*** Trial Ct. Op., 12/20/22, at 3 n.2. Motions for summary judgment and the responses thereto are not pleadings as defined in the Rules of Civil Procedure. ***See*** Pa.R.C.P. 1017. Therefore, when a non-moving party files a response to a motion for summary judgment that generally denies the factual allegations in the motion, the non-moving party cannot be deemed to have admitted those allegations. ***See Welsh***, 154 A.3d at 392; ***cf.*** Pa.R.C.P. 1029. Further, while the non-moving party has the burden to identify any issues of fact that would preclude the entry of summary judgment, there is no requirement that provide a "counter-statement" of the facts in her response. ***See*** Pa.R.C.P. 1035.1-1035.5; ***cf.*** Trial Ct. Op., 12/20/22, at 3 n.2.

Second, the trial court failed to consider Appellant's expert reports in the light most favorable to Appellant as the non-moving party and assailed the experts' credibility. Notably, the trial court observed that Appellant's experts relied on irrelevant facts, particularly allegations made against

Appellee Estioko in unrelated litigation. *See* Trial Ct. Op., 12/20/22, at 21. Further, the trial court concluded that although Appellant's experts opined that Appellees had been grossly negligent in the treatment and discharge of Decedent from WBGH, Appellant's experts "exhibit a lack of understanding of the meaning of 'gross negligence' as it has been interpreted for purposes of § 7114(a)," and discounted all of Appellant's expert reports. *See id.* at 21-22. The trial court's analysis of the record does not comply with our Supreme Court's holdings in *Bourgeois* and *Summers*. *See Bourgeois*, 242 A.3d at 650; *Summers*, 997 A.2d at 1161.

Appellant's experts opined that Appellee Simon's treatment decisions, including detaining Decedent because he displayed suicidal ideation and later discharging Decedent with plans for follow-up outpatient treatment was "a severe and gross deviation from the standard of care and industry standards[]" because Appellee Simon acted without consulting with the supervising physician (*i.e.*, Appellee Estioko). *See* R.R. at 16089a (Abigail Davis, PA-C's report); *see also id.* at 16080a, 16095a, 16098a. PA Davis further explained that Appellee Simon's conduct here was a "severe deviation" from the applicable standard of care for a PA (as well as a violation of her supervision agreement and WBGH's policies), which requires that the supervising physician perform a separate assessment of the patient and do not authorize a PA to detain a patient. *See id.* at 16087a; *see also id.* at 16346a-47a (Evie Marcolini, M.D.'s report concurring with PA Davis's report regarding physician supervision for a PA).

Next, Appellant's experts concluded that Appellee Estioko "grossly" and "egregious[ly]" deviated from the standard of care because he failed to perform a face-to-face evaluation of Decedent regarding Decedent's suicidal ideation. *See* R.R. at 16444a-45a, 16468a-69a (Heikki Nikkanen, M.D.'s report); *see also id.* at 16498a, 16506a (Moustafa Shafey, M.D.'s report). Particularly, Dr. Shafey opined that Appellee Estioko's failure to personally evaluate Decedent violated the requirements of the MHPA. *See id.* at 16498a, 16506a. Additionally, PA Davis and Dr. Marcolini concluded that Appellee Estioko's failure to closely supervise Appellee Simon was "severely below" the standard of care and industry standards. *See id.* at 16084a (PA Davis's report); 16349a-50a (Dr. Marcolini's report).

As for Appellee May, Appellant's experts opined that May's failure to consult with Nurse Ruckle about her assessment of Decedent's risk of suicide and failure to retrieve Decedent's medical records from the IBEX system was "clearly gross negligence[.]" *See* R.R. at 16294a (William Pecuch's Report); *see also id.* at 16572a (Dr. Shafey's report). Further, Appellee May's failure to inform Dr. Shah, the consulting psychiatrist, of the records documenting Decedent's prior symptoms, including his suicidal ideation, was "severely and substantially below" and a "gross deviation" from the standard of care. *See id.* at 16295a-96a (Pecuch's Report); *see also id.* at 16516a, 16534a-47a (Dr. Shafey's Report). Further, the experts concluded that Appellee May's failure to contact Decedent's treating psychiatrist, Decedent's family, and the police officers who transported Decedent to WBGH for additional background

information about Decedent was gross negligence. *See id.* at 16276a-77a, 16286a (Pecuch's Report); *see also id.* at 16520a, 16523a, 16572a (Dr. Shafey's Report).

Further, the record sufficiently supports the conclusions in Appellant's expert reports. *See Bourgeois*, 242 A.3d at 650; *Summers*, 997 A.2d at 1161. For these reasons, we conclude that Appellant presented sufficient evidence to establish genuine issues of material fact concerning whether Appellees were grossly negligent in discharging Decedent from WBGH with plans for follow-up outpatient treatment instead of involuntarily committing Decedent for further evaluation pursuant to Section 302 of the MHPA. *See Bourgeois*, 242 A.3d at 650; *Albright*, 696 A.2d at 1164. Therefore, the trial court erred by entering summary judgment in favor of Appellees with respect to medical negligence. *See Liberty Mut. Grp., Inc.*, 270 A.3d at 547-48.

### Corporate Negligence

In her second issue, Appellant argues that the MHPA's immunity provision does not apply to her corporate negligence cause of action. Appellant's Brief at 25-28. Appellant alternatively argues that her experts established a genuine issue of material fact as to whether Appellee Hospital was grossly negligent in selecting and retaining competent physicians, overseeing all persons who practice medicine at Appellee Hospital, and in adopting and enforcing adequate policies regarding patient care. *Id.* at 25-26. Therefore, Appellant concludes that the trial court's orders granting

Appellee Hospital's motion for summary judgment should be reversed and this case remanded for trial. *Id.* at 28.

This Court has explained:

In *Thompson v. Nason Hosp.*, 591 A.2d 703 (Pa. 1991), our Supreme Court "first adopted the theory that a corporation, specifically a hospital, can be held directly liable for negligence." *Welsh v. Bulger*, 698 A.2d 581, 585 (Pa. 1997). Corporate negligence is a doctrine under which a hospital owes a direct duty to its patients to ensure their safety and well-being while in the hospital.

Under *Thompson*, a hospital has the following duties:

(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

Because the duty to uphold the proper standard of care runs directly from the hospital to the patient, an injured party need not rely on the negligence of a third-party, such as a doctor or nurse, to establish a cause of action in corporate negligence. Instead, corporate negligence is based on the negligent acts of the institution. A cause of action for corporate negligence arises from the policies, actions[,] or inaction of the institution itself rather than the specific acts of individual hospital employees. Thus, under this theory, a corporation is held directly liable, as opposed to vicariously liable, for its own negligent acts.

*Welsh*, 698 A.2d at 585 (internal citations and quotation marks omitted).

[There are] three elements necessary to establish a *prima facie* case of corporate negligence. The plaintiff must establish all of the following:

1. [the hospital] acted in deviation from the standard of care;

- 19 -

2. [the hospital] had actual or constructive notice of the defects or procedures which created the harm; and

3. that the conduct was a substantial factor in bringing about the harm.

Unless a hospital's negligence is obvious, a plaintiff must produce expert testimony to establish that the hospital deviated from an accepted standard of care and that the deviation was a substantial factor in causing the harm to the plaintiff.

*Corey v. Wilkes-Barre Hosp. Co., LLC*, 307 A.3d 701, 708-09 (Pa. Super. 2023) (*en banc*) (some citations omitted and some formatting altered).

A hospital may be found liable under a theory of corporate negligence based upon its failure to properly train its staff. *See Shiflett v. Lehigh Valley Health Network, Inc.*, 174 A.3d 1066, 1090 (Pa. Super. 2017), *rev'd and remanded on other grounds*, 217 A.3d 225 (Pa. 2019).

Here, although the trial court did not specifically mention Appellant's corporate negligence claim, it concluded that Appellant's experts failed to establish that Appellee Hospital had been grossly negligent. *See* Trial Ct. Op., 12/20/22, at 15-22. Specifically, the trial court discounted Appellant's expert reports discussing Appellee Hospital's credentialing of Appellee Estioko because the experts referred to and relied on allegations made against Appellee Estioko in unrelated litigation. *See id.* at 21. The trial court further concluded that Appellant's expert reports addressing Appellees Simon and May's training, the methods by which Appellee Hospital shared information between medical practitioners, and Appellee Hospital's policies and procedures

- 20 -

were not based on the facts of the case and did not establish gross negligence. ***See id.***

As stated above, based on our review of the record, we conclude that the trial court erred by failing to view the record in the light most favorable to Appellant as the non-moving party. Further, the trial court erred by *sua sponte* assailing the conclusions of Appellant's experts when those conclusions are sufficiently supported by the record. ***See Bourgeois***, 242 A.3d at 650; ***Summers***, 997 A.2d at 1161.

Here, Appellant's experts opined that there was "an overwhelming and repeated failure" in Appellee Hospital's process for selecting and retaining competent physicians because Appellee Hospital granted credentials to practice in the emergency department to Appellee Estioko even though he had repeatedly failed several certification examinations in the past, including board certification examinations for internal medicine and emergency medicine. ***See*** R.R. at 16129a-31a (John McCabe, M.D.'s report); ***see also id.*** at 16320a-21a, 16345a (Dr. Marcolini's Report); ***id.*** at 16438a, 16446a-47a, 16449a-51a, 16467a (Dr. Nikkanen's Report).

Additionally, Appellant's experts concluded that Appellee Hospital's failure to provide "on-the-job training to [Appellee] Simon is far below the standard of care and industry standard." ***See id.***at 16073a (PA Davis's report); ***see also id.*** at 16449a (Dr. Nikkanen's Report). Further, Mr. Pecuch concluded that May's training as a crisis clinician "did not adequately, properly[,] or reasonably train [him] concerning the rigors of seeing crisis

patients. This is at a minimum grossly negligent . . . .” ***See id.*** at 16267a; ***see also id.*** at 16267a-68a (Pecuch discusses the industry standards for crisis workers); ***id.*** at 16451a (Dr. Nikkanen’s report).

Lastly, Appellant produced expert reports concluding that Appellee Hospital was grossly negligent for failing to adopt and enforce policies relating to the treatment of patients with suicidal ideation and applying Section 302 of the MHPA. ***See id.*** at 16291a (Pecuch’s report); ***id.*** at 16326a-32a (Dr. Marcolini’s Report); ***id.*** at 16443a (Dr. Nikkanen’s report); ***id.*** at 16507a-08a, 16517a-18a, 16530a (Dr. Shafey’s report).

Based on our review of the record, viewed in the light most favorable to Appellant, we conclude that the experts’ conclusions are sufficiently supported by the record and there are genuine issues of material fact concerning whether Appellee Hospital flagrantly or grossly departed from the standard of care regarding its duties to select and retain only competent physicians, oversee all persons who practice medicine within its walls as to patient care, and formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients. ***See Corey***, 307 A.3d at 708; ***see also Albright***, 696 A.2d at 1164. Further, Appellant’s experts opined that Appellee Hospital was aware of these flagrant or gross deviations from the standards of care and these deviations were a substantial factor in causing the harm to Decedent. ***See Corey***, 307 A.3d at 709. Therefore, the trial court erred by entering summary judgment in favor of Appellee Hospital on Appellant’s corporate negligence count. ***See Liberty Mut. Grp., Inc.***, 270 A.3d at 547-48.

In sum, we conclude that when viewed in the light most favorable to Appellant, the record contains genuine issues of material fact concerning Appellees' gross negligence. Accordingly, we reverse and remand for further proceedings.[7]

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Lazarus joins the opinion.

PJE Stevens concurs in the result.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/05/2024

---

[7] Because we conclude that Appellant has presented sufficient evidence of gross negligence with respect to her corporate negligence count against Appellee Hospital, we decline to address her arguments that the MHPA does not apply to that count.